Appeal from Second District.

## LEWIS v. PINGREE NAT. BANK.

No. 2773.   Decided August 21, 1915' (151 Pac. 558).

1. NUISANCE—PUBLIC NUISANCES—REMEDIES OF PRIVATE PERSONS. A private person cannot sue to abate a public nuisance, unless he suffers some special or peculiar injury not common to the rest of the community.  (Page 42.)

2. NUISANCE—PUBLIC NUISANCES—REMEDIES OF PRIVATE PERSONS— "SUBSTANTIAL INJURY." A private person, suffering a special injury from a public nuisance, can sue for damages and for the abatement of the nuisance, and to permit him to sue the extent of the injury is not material, so long as he suffers some special substantial injury, which is injury of a substantial character.  (Page 42.)

3. MUNICIPAL CORPORATIONS—STREETS—"PUBLIC NUISANCE"—ABATE-MENT AT SUIT OF PRIVATE PERSON. Though an encroachment on a public street is a "public nuisance," it will not always be abated at the suit of a private person sustaining special damages; but the court must determine whether it is equitable to compel an abatement, or permit the encroachment to remain and award damages only.  (Page 43.)

4. MUNICIPAL CORPORATIONS—STREETS—PUBLIC NUISANCES—ABATE-MENT AT SUIT OF PRIVATE PERSON. Plaintiff, owning a business building abutting on a street, knew that defendant proposed to erect an adjacent building, which, when completed, would encroach on the street; but he made no complaint until after the building was erected. To remove the encroachment would cost at least $15,000, and the building would not then answer the purposes for which it was designed. The depreciation to plaintiff's building in consequence of the encroachment could be ascertained and compensated. Held, that the court would not, at the suit of plaintiff, compel the removal of the encroachment as a public nuisance causing special injury to him, but would limit him to a recovery of damages.  (Page 45.)

5. MUNICIPAL CORPORATIONS—STREETS—PUBLIC NUISANCE—INJURY TO PRIVATE INDIVIDUAL—MEASURE OF DAMAGES. Where an encroachment on a public street is a public nuisance, causing impairment of an established business, the impairment is an element of damage, which may be proved as a distinct injury caused by the nuisance, and recoverable by the owner of the business.  (Page 49.)

6. MUNICIPAL CORPORATIONS—STREETS—PUBLIC NUISANCE—INJURY TO PRIVATE INDIVIDUAL—MEASURE OF DAMAGES. Where the court

at the suit of a private individual for the abatement of an encroachment on a street, constituting a public nuisance, and for damages, refused to abate the nuisance, plaintiff could recover all the damages sustained, past and prospective; and where the encroachment lessened the rental value of the business property of plaintiff, he could recover in the action the full depreciation of the value, and recover such a sum as, if invested at the legal rate of interest, would produce the amount of the lessened rental value. (Page 50.)

7. MUNICIPAL CORPORATIONS—PUBLIC NUISANCE—DAMAGES—ABATE-MENT. Defendant, who by encroaching on a public street creates a public nuisance to the special injury of plaintiff, may elect to remove the encroachment, instead of paying the damages caused by the nuisance, and the election may be made at any time before trial of an action to remove the encroachment and for damages; and where the encroachment is removed, the damage recoverable is the amount of the depreciation of the value of the use of the property up to the time of actual removal. (Page 50.)

8. MUNICIPAL CORPORATIONS — STREETS — PUBLIC NUISANCE — DAMAGES. An owner of a business building, who maintained an awning about 8 feet from the ground and projecting into the street, could not recover damages because the adjacent owner so constructed his building that the cornice thereof projected out into the street to an extent less than the projection of the awning, where the cornice was elevated above the street some thirty-five or forty feet. (Page 52.)

9. ADJOINING LANDOWNERS—ENCROACHMENTS—REMEDIES. An owner who without right extended a part of his building over the building of the adjacent owner, must at the suit of the latter remove the encroachment, and he cannot limit the adjacent owner to a recovery of damages only. (Page 52.)

10. MUNICIPAL CORPORATIONS—ENCROACHMENT ON STREETS—REASONABLE ENCROACHMENTS. An owner of property abutting on a street may not project his building into the street for ornamental or any other purpose without being legally liable to any other owner for any damage caused by the projection, though the Legislature, or a municipality, when duly authorized by the Legislature, may authorize encroachment on public streets to a reasonable extent, subject to the right of any aggrieved person to recover damages sustained. (Page 53.)

11. INJUNCTION—RELIEF—DAMAGES. Though, under the Constitution, a right of action exists for an injury to private property, the court, where both legal and equitable remedies are given, may in proper cases limit the complaining party to his legal remedy, especially where the injury may be fully compensated

by damages, and where to do otherwise would inflict great and unnecessary expense on the wrong-doer.  (Page 53.)

Appeal from District Court, Second District; Hon. *F. C. Loofbourow*, Judge.

Action by John S. Lewis against the Pingree National Bank.

Judgment for plaintiff.  Defendant appeals.

REVERSED and REMANDED.

*H. H. Henderson* for appellant.

*John G. Willis* for respondent.

FRICK, J.

The plaintiff, some time in the early part of 1913 (the exact time is not made to appear), commenced this action to require the defendant to remove the front of a certain bank building from a public street in Ogden City, Utah, on which, it was alleged, it was an encroachment, and therefore constituted a public nuisance, and that the same, by reason of its projection into the street, damaged the plaintiff in the particulars alleged.  The defendant filed an answer, in which it admitted the ownership and construction of the bank building, and set forth that the building was constructed by permission of the city of Ogden, that for certain reasons stated the plaintiff was estopped to demand the removal of the building from the street, and denied that he was damaged.  Upon a trial to the court without a jury, it found in favor of the plaintiff, found that he was damaged in the sum of $900, found that the bank building, or the front thereof, projected into the street, and that it constituted a public nuisance, and, after entering judgment for the amount of damages found, also entered a mandatory injunction, requiring the defendant to remove the front of said bank building from the street. The defendant appeals.

The bank building in question was erected during the spring and summer of 1912, and was completed some time late in

the fall of that year.  Ogden City, in 1910, had a population of 25,580, and the bank building in question was erected on Washington avenue, the principal street of the city, and upon a block which lies in the very heart or business center of the city.  Washington avenue is 132 feet in width from lot line to lot line, or 66 feet on each side of the center.  The following plat will help to explain the questions involved in the controversy:

"B" indicates the bank building in question.  "L" shows a portion of the property owned by the plaintiff, upon which is located a five-story brick and terra cotta building, the lower floor of which is used as a jewelry store; the stock being owned by a corporation of which the plaintiff is president, while the lot and building thereon is owned by him individually.  "H" shows a part of a hardware store adjoining the bank building on the south.  The heavy black line indicates the line to which plaintiff's and the hardware buildings now project into the street; the broken line immediately back of the heavy black line marks the true lot line.  The squares "b" "b" indicate two concrete cubes faced with granite, which cubes rest on reinforced concrete footings extending down to or below the basement floor of the bank building.  These cubes also project into the street beyond plaintiff's

building about 3.33 feet. They also constitute the bases upon which rest the round pillars, marked "P" "P" on the plat. These pillars are about 30 feet in height and about three feet in diameter. The pillars are hollow, and on the inside thereof are two concrete columns 10x14 inches, extending the full height of the pillars, which are shown by the shaded squares within the circle, indicating the pillars, on the plat. The two columns are constructed of concrete, which is reinforced with steel rods, and the columns also answer the purpose of buttresses, and these support and strengthen the east or front wall of the bank building, which wall, the evidence shows, was made thinner and weaker for the reason that it was strengthened and supported by those two reinforced concrete columns. Indeed, those columns are practically a part of the wall. The outer part of the round pillars is composed of fluted hollow terra cotta "drums," which are placed one on the other, and which, after being put in place, are filled in with brick-bats cemented together with lime, sand, and cement. Between the two cube bases are four granite steps, leading up to the first floor of the bank building, which floor is raised above the sidewalk possibly three feet, more or less. The heavy black line marked "c" "c" indicates the cornice of the bank building, which is over thirty-five feet above the sidewalk, projects into the street about six feet, and extends or laps over into the front of plaintiff's building between the fourth and fifth floors as shown by the returning lines "c" "c" on the plat. A concrete sidewalk is laid in front of the building, either twenty or twenty-one feet in width, marked "walk" on the plat. The walls of the bank building are all constructed of reinforced concrete; that is, steel rods of greater or lesser diameters are placed into the molds into which a mixture of sand, cement, and gravel is poured, and those rods thus become imbedded into the walls which are formed by the mixture aforesaid, and reinforce and strengthen them. The bank building is fireproof, and the walls thereof are practically monolithic. The small "w" on the plat indicates the south show window in the front of plaintiff's building, and from which he contends the view is obstructed by the north pillar of the bank building. The broken lines

leading in different directions in front of the buildings indi-
cate various points from which a pedestrian passing on the
sidewalk at various distances from the plaintiff's window will
be able to see it and the wares therein displayed.

The cost of the bank building, "without fixtures or vaults,"
was approximately $60,000, and the cost of remodeling the
front to conform to the mandatory injunction will, as found
by the court, be not less than $15,000. It was also shown
by the contractors who constructed the building, and who
testified as witnesses for the plaintiff, that to remodel the
front as required by the injunction will weaken the front
wall, and will destroy or at least affect the architectural beau-
ty or effect of the front, of the building. The architect who
planned the building testified that, in view of the monolithic
character of its walls and the manner of their construction,
the building cannot be remodeled by removing the front and
still leave it "as suitable as it now is for the work for which
it is designed." This evidence is not disputed, and in view
of the actual conditions prevailing, as disclosed by the whole
evidence, it is not easy to see how it successfully can be dis-
puted. The defendant also produced the building permit
issued by the city, by which it was given leave to construct
the building in question. The defendant also offered to prove
at the trial that there were a number of bank fronts and
fronts of other buildings in Ogden City which project into
the streets or sidewalks as far, and in some instances farther,
than does the building in question, and that there were area-
ways and stairways and other like structures which were al-
lowed to project into the sidewalks. This evidence was, how-
ever, rejected by the court; but, in view of the conclusions
reached, the ruling becomes immaterial. We shall refer to
these matters again hereinafter.

The plaintiff produced evidence tending to show that his
two front windows were well adapted for show purposes;
that show windows constituted a valuable and useful asset
to any modern store building; that the north pillar of defend-
ant's bank obstructed the view of his south window and the
wares therein displayed for sale from the passerby; that he
and those interested with him and their employes had noticed

that articles displayed in the south window were frequently overlooked, when the same kind of an article was noticed in the north window by prospective purchasers. They all conceded, however, that the sales as a whole in 1912, the year the bank building was erected, were greater than in 1911; that the obstructions by reason of projecting fences and like structures in front of defendant's building were much greater in 1912 than the preceding year, or than they now are. The sales were, however, also shown to have been greater in 1911 than they were in 1910. What they were after those years, of course, could not be shown. The plaintiff produced bankers, business men, and real estate dealers, all of whom testified that in their judgment the projecting pillars of defendant's bank building obstructed the view of plaintiff's south show window to some extent, at least, and that the value thereof as a show window was thereby materially impaired; but neither of them would say to what exent in dollars and cents plaintiff had been damaged. They all, however, agreed that plaintiff's property sustained some substantial damage. The plaintiff also testified that the stock of goods in the jewelry store was about $25,000, and that in his opinion his property had been damaged to the extent of $2,500 up to the time of trial. We shall refer to the question of damages again later.

Upon the other hand, the defendant produced a like or a greater number of witnesses, with apparently equal knowledge and experience, who testified that in their judgment the plaintiff had suffered no substantial damages by reason of the projecting pillars, and that in their opinion no damages would result to the plaintiff therefrom.

We have thus very briefly outlined the material facts as they were made to appear at the trial. There are other features of the evidence that require consideration; but, in order to avoid unnecessary repetition, we shall refer to those in connection with the propositions decided and to which the evidence more particularly relates.

Defendant's counsel vigorously insists that the court's findings are not sustained by the evidence; that they are against the great weight of the evidence; that the judgment is contrary to law, and hence the findings should not be permitted

to stand, and the judgment should not prevail. Upon the other hand, counsel for plaintiff contends that the findings are amply sustained by the evidence, and that **1, 2** the judgment is in accordance with law, and should be affirmed. Plaintiff's counsel contends that, to the extent that the front of the bank building extends into the street, it constitutes a public nuisance, which should be abated, and that nothing short of a removal of the front of the building as ordered by the court can or will abate such nuisance. Defendant's counsel, in reply, insists that, although it were conceded that the projection of the front of the bank building into the street constitutes a public nuisance, yet the plaintiff has not shown such special or peculiar injury or damage for which the law authorizes a private person to invoke the aid of a court of equity to abate such a public nuisance. No doubt the rule is well established that private persons may not invoke the aid of the courts to abate public nuisances, unless they can show that they suffer some special or peculiar injury or damage which is not common to the rest of the community. While private individuals, therefore, may not champion purely public rights, yet where an individual suffers some injury or damage through a public nuisance, which is different from that suffered by the community at large, he ordinarily may invoke the aid of the courts of justice, not only to redress the injury or damage suffered by him, but he may also ask to have the nuisance removed or abated. In order to permit an individual to resort to the courts, the extent of the injury or damage, ordinarily, is not material, so long as it is clearly shown that the plaintiff suffers some substantial injury or damage which is not suffered by the community at large. By substantial injury is meant that "it must be of a substantial character, not fleeting or evanescent." 4 Suth. Damages (3d Ed.) section 1058; *First National Bank* v. *Tyson,* 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; *Ackerman* v. *True,* 175 N. Y. 353, 67 N. E. 629. The foregoing authorities sufficiently illustrate the principle, and hence we shall not refer to others. Defendant's contention in this regard can, therefore, not prevail.

Plaintiff's counsel, however, in effect contends that, if it be

once held that the plaintiff may sustain an action, it then logically and necessarily follows that the district court's order requiring the defendant to remove the offending front of its building from the street must prevail. This is really the crucial question in this case. In support     **3** of his contention counsel cites the two cases already referred to, namely, *First National Bank* v. *Tyson* and *Ackerman* v. *True, supra,* and in connection therewith also cites *Newell* v. *Sass,* 142 Ill. 104, 31 N. E. 176; *City of New York* v. *Rice,* 198 N. Y. 124, 91 N. E. 283, 28 L. R. A. (N. S.) 375; *Field* v. *Barling,* 149 Ill. 556, 37 N. E. 850, 24 L. R. A. 406, 41 Am. St. Rep. 311, and *People* v. *Harris,* 203 Ill. 272, 67 N. E. 785, 96 Am. St. Rep. 304, and a few others. We have carefully read the cases just referred to, as well as others relating to the same subject. It is true that there is some language used in *First National Bank* v. *Tyson* and in *Ackerman* v. *True* which seems to sustain counsel's claim that an encroachment upon a public street necessarily constitutes a public nuisance, and where such encroachment causes special or peculiar injury or damage to a property owner or inhabitant he may bring an action to abate the nuisance and for damages as well. In *First National Bank* v. *Tyson,* Tyson brought an action to prohibit the defendant bank from projecting the front of a bank building into the street by erecting or placing pillars in a manner similar to what the defendant has done in the case at bar. The action was, however, commenced before the pillars were erected, and at a time when the defendant could change its plans and construct the front of the building, so as to make it conform to the lot line, without incurring great expense. The court, therefore, issued an injunction requiring the defendant to remove the material which had already been placed in the street, and restrained the defendant from erecting the pillars as proposed. What the court would have done under facts and circumstances like those in the case at bar is left to conjecture merely. We concede, however, that the court would have had the power to order the entire front removed from the street, even though it had been completed; but whether that would have been the order we are not prepared to say.

In the case of *Ackerman* v. *True* the obstruction consisted
of a large brick wall, which extended some distance into a
public street. Notwithstanding that the evidence was to the
effect that the plaintiff's property was depreciated in value
by the wall to the extent of about $15,000, the lower court
refused the plaintiff any relief. The New York Court of
Appeals, on appeal to that court, reversed the judgment of
the lower court, and in the court's opinion it is held that, in-
asmuch that the wall was an encroachment on a public street,
it constituted a public nuisance, and therefore should be re-
moved (that is, abated), and that such might be ordered to
be done in that action. It is also true that in that case the
wall was fully completed when the action was commenced,
but there is nothing made to appear why the wall could not
readily be removed without any injury or damage other than
the expense of removal. In *New York City* v. *Rice, supra,*
the court required a property owner to remove two retaining
walls, which he had projected six feet in the street on one
side of his property and seven feet on the other side. In that
case, however, the city brought the action, and we do not see
how the court could have ruled otherwise than to require the
walls to be removed from the streets. To have permitted
them to remain in the streets would have resulted in adding
six feet on one side and seven feet on the other of public
ground to the owner's property. The owner, in building the
walls, therefore, merely appropriated public property for his
own private purposes. While the principle in that case is
applicable to the case at bar, yet, for reasons hereinafter
appearing, it does not follow that the same drastic remedy
should be applied here. In another New York case, namely
*Sautter* v. *Utica City National Bank,* 45 Misc. Rep. 15, 90
N. Y. Supp. 838, the court refused to require the bank to
remove certain pillars from the sidewalk, although it was
made to appear that the cost of removing them and of re-
modeling the front of the bank building would have been
much less than it would be in the case at bar. It is true
that the court based the decision in that case on its finding
that the adjoining owner sustained no special damages, al-
though his contention was precisely the same as is that of

the plaintiff here, namely, that the pillars obstructed or interfered with the view of those who passed by on the sidewalk, and prevented them from seeing his show window which was nearest the pillar until they reached a point in front of the window. The case was appealed to the Court of Appeals, and by that court affirmed, in 193 N. Y. 661, 87 N. E. 1126.

Of course, that case is not controlling either way here. It, however, illustrates the point that, although an encroachment on a public street necessarily constitutes a public nuisance, yet such a nuisance will not always be abated at the instance of a private person by requiring the same to be removed from the public street. All the other cases referred to by counsel are readily distinguishable from the case at bar. There is nothing in any of the cases, therefore, which necessarily requires the removal of the front of defendant's bank building under the undisputed facts and circumstances of the case at bar, although it be conceded that projecting the front into the street constitutes a public nuisance which the courts have full power to abate, and it be further conceded that the plaintiff's property is substantially damaged by the pillar next to the show window in his store building. The real question to be determined, therefore, is whether in this case a court of equity should exercise its full power in requiring the removal of the nuisance. By this we mean whether it would not be more equitable and would not better reflect justice to permit the building to remain as it is and limit the plaintiff to his legal rights in the premises. Do the facts sustain such a conclusion?

We are of the opinion that, not only are the facts sufficient to justify it, but, as we view it, the fundamental principles of justice and equity are better subserved by adopting such a course. One feature of the case is that, although the plaintiff, to a certain extent, attempted to deny that he knew before the superstructure of the building was erected that the defendant proposed to project the front of the bank building into the street, yet the evidence leaves no room for a reasonable doubt that he was made aware of that fact before any part of the superstructure was erected, and certainly as soon as that work was commenced. More-

over, his attention was directed to the fact by responsible persons and by such of his own witnesses who were engaged in the construction of the building, and the extent of the projection was pointed out to him. He, however, waited until the building was completed, and until it was almost an impossibility, in view of the nature of the material used and in view of the construction of the walls of the building, to successfully remove the front thereof and to remodel the same, so as to make it answer the purpose for which it was designed. The court found that the plaintiff did not "consent" to the construction of the front of the building as it is constructed, and further found that he was not estopped from maintaining this action to remove the same from the street by anything he either said or did. We are also of the opinion that plaintiff's acts and conduct did not constitute an estoppel *in pais*. But we are also satisfied that he did not act with the degree of promptness and diligence which, without injury or even inconvenience to himself, he might have done. He could easily have brought the matter to the attention of a court of equity in time to prevent the construction of the superstructure of the front of the building, or at any rate before any considerable part thereof was constructed. Had he done that, there could be no question regarding his right to invoke both the legal power of a court to redress his injuries, if any, by awarding him damages, as well as its equitable powers to cause the projecting portion of the bank building to be removed from the street.

In addition to the foregoing, there are also a few other features in this case which operate in favor of the defendant. In view of all the facts and circumstances, what by Mr. Pomeroy (5 Pom. Eq. Jur. section 508) is called "the balance of injury" in cases of encroachment is certainly in favor of the defendant, in so far as that principle refers to the removal of the front of the bank building. Here we have a case where the street is of the generous width of 132 feet from lot line to lot line, twenty feet of which on either side is devoted to a concrete sidewalk for pedestrians. The public, therefore, in the nature of things, cannot be inconvenienced to any great extent by an obstructed passageway. Then, again,

it is clearly shown that the construction of the front of the building is such that, if the pillars and the reinforced concrete pilasters or columns, which also perform the function of buttresses, are removed, it will weaken the whole front of the building, and thus leave it in a weakened condition. The architect also testified, and his statements are not disputed, that the front of the building cannot be removed and remodeled, and still leave the building in a condition suitable for the purposes for which it was constructed, because it would result in entirely eliminating two small front rooms. It is also made to appear that, in view of the character of the material used and the construction of the buliding, it, as a whole, cannot be moved back toward the rear end of the lot; and hence, when the front is removed, it includes the marble steps. The bank floor will be left about three feet above the sidewalk, and there will be no way to enter the bank, unless the whole concrete front of the building is forcibly removed, so as to place the front of the building back to permit steps to be placed upon the defendant's lot.    Further, the evidence is to the effect that the front of the building as now constructed is an ornament to any city, and to now tear down and remodel it will entail an expenditure of at least $15,000, and, as we have seen, the architect says that even then the building will not answer the purposes for which it was planned and designed.    Upon the other hand, while plaintiff's building is at least to some extent affected, and its use for business purposes is depreciated in value, yet the depreciation can as readily be ascertained and compensated as that could be done if the building were affected and depreciated in value from some other obstruction.    In other words, plaintiff's injury and damages can be adjusted, and he can be compensated without inflicting any unnecessary hardship upon the defendant.    May this be done under the law, in view of the facts and circumstances?

We think that it may not only be done, but that under the peculiar facts and circumstances it is the only way out, without inflicting an unnecessary hardship upon some one.    We have already alluded to the fact that, if the plaintiff desired to insist upon his full. equitable rights, he should have acted

promptly, and not have remained silent until the building was completed by the expenditure of very large sums of money. The Supreme Court of Michigan has announced what seems to us to be a most practical and certainly a just and equitable rule in cases where the construction of public or other improvements result in creating or in increasing an already existing public nuisance, by requiring those who object to the matter to act promptly and before the improvement is completed, or before large sums of money have been expended in furtherance of the enterprise. It may be that, where the nuisance is such as to affect the public health or welfare, or even the health of individuals, it should nevertheless be abated. Where, as here, however, practically nothing is involved except the depreciation of the value of private property which is devoted to business purposes, and where the depreciation can readily be ascertained and compensated, then the rule as laid down by the Supreme Court of Michigan seems manifestly fair and just, especially where the expense of removal would far exceed any possible injury that could result from the maintenance of the structure which it is asserted constitutes the nuisance and causes the damage. In referring to the protesting parties, who, by an action in equity, sought to abate a public nuisance, and in defining their rights, the Supreme Court of Michigan in *McKee* v. *City of Grand Rapids,* 137 Mich. at page 212, 100 N. W. at page 585, lays down the following rule:

"They (the plaintiffs) contented themselves with a mere protest at some stage of the proceedings. Two courses were then open to them. (1) To file a bill in equity to enjoin the work, on the ground that it would increase the nuisance already existing, and cause them irreparable damages; (2) to wait until the work was done, and bring an action at law for damages. They waited. Equity will not now lend its aid to a party to compel an expensive work to be undone, which the party might, by planting a bill in equity in reasonable season, have prevented."

So here. If the plaintiff desired to prevent the erection of the bank front as planned, and as all others who were interested with him understood it was planned, and as he must have known it was planned and was being constructed, why did he not bring an action, as was done in the Tyson Case,

which he now cites and relies on? Had he done that, the courts would undoubtedly have prevented the defendant from proceeding to erect the front as proposed by it. The plaintiff stood by, however, and permitted the defendant to proceed with the erection of the building, when he knew the character of the material used and the nature of its construction, until the building was completed, and then he asks to have the most important part thereof removed. He must have known that to remove that portion of the building would entail great expense, and that it could not be done without greatly affecting the architectural effect or beauty of the building, as well as in a measure at least destroying its usefulness. Under those circumstances we think the plaintiff should be limited to his legal remedy, namely, the recovery of such an amount of damages as the usable value of his building may be depreciated by reason of the·construction of the bank front as it now is.

This brings us to the question of damages, and how they should be measured. Plaintiff contends, and it is all that he can possibly claim, that the north pillar obstructs the view of his south show window, and in that way makes that window, or his storeroom, rather, less valuable for business purposes than if the offending pillar were not standing in the street. This, he contends, results in a depreciation of the usuable value of his property. What is to be ascertained, therefore, is: How much is the value of plaintiff's use of his property lessened by the erection and maintenance of the bank front in the manner it is constructed? In 4 Suth. Damages (3d Ed.) section 1054, the author states the rule under such circumstances tersely and clearly thus:

"The interruption or impairment of an established business is an element of damage which may be proved as a distinct injury, or as bearing upon the inquiry how much the value of the plaintiff's use of the premises affected has been lessened by the defendant's wrongdoing."

If in this case, therefore, the defendant should be ordered to remove the offending pillars, the impairment of plaintiff's business could be shown as a distinct injury, and he would be limited in his recovery to the amount he had suffered by

such impairment up to the time of the removal of the obstruction, and, under certain circumstances, he might sustain successive actions to recover those damages.

When, as here, however, the court does not deem it just and equitable to order the thing which causes the impairment of the value as aforesaid to be removed, then the plaintiff must in one action recover his damages for all time, and the defendant, unless he chooses to remove the offend-    **6, 7** ing structure, must pay all the damages suffered by the plaintiff both past and prospective. Under such circumstances the measure of damages, as stated by Mr. Sutherland, is, "How much the value of the plaintiff's use of the premises affected has been lessened by the defendant's wrongdoing"? We thus see that in cases like the one at bar plaintiff's property is not directly affected or depreciated by physical injury, but the value of its use for business purposes only is affected, and may to some extent be depreciated. If it were thus shown that the obstruction lessened or reduced the rental value of plaintiff's storeroom, it would depreciate the value of the use of such room. The plaintiff is entitled, therefore, to recover in one action the full depreciation of the value of his property as just stated. To illustrate: Assuming that the pillars complained of reduced or lessened the rent of plaintiff's store to the extent of $33.33 per month, then his property would be damaged in a sum which, if invested at the legal rate of interest, would produce that amount. What is that sum? Under our legal rate of interest, it would be $5,000, since $5,000, invested at 8 per cent. interest, would yield $400 a year, or an equivalent of $33.33 per month. If the rent of plaintiff's store, therefore, is reduced to the amount of $33.33 per month, he should be awarded $5,000, and no more. The foregoing illustration is offered merely as a guide in determining the measure of damages, where, as here, the whole damages must be recovered in one action, and in doing so we do not intimate that the plaintiff suffered that or any other sum or amount of damages. The foregoing measure of damages is also approved in Joyce, Law of Nuisances, section 259, and in 3 Joyce on Damages, section 2150.

While it may be conceded that the cases are not in entire harmony with regard to the measure of damages in such cases, yet the diversity of opinion arises more from the point of view that is entertained by the several courts than it does by reason of fundamental differences. The foregoing measure seems to us to be eminently fair and just. By adopting it no great injustice can result to either party to such actions. Moreover, it also protects and compensates the tenant if the property is leased, and if occupied by the owner he, nevertheless, is compensated for the lessened rental value of his property. The tenant is made whole by being required to pay only the lessened or actual rental value of the property, and since the rent is reduced by reason of the obstruction he is also fully compensated for that. Upon the other hand, the owner receives in one sum the reduced rental value of his property, and is thus also fully compensated for his loss. Of course, if in such a case the defendant should prefer to remove the obstruction rather than to pay the depreciated value of the use of plaintiff's property for all time, he may at any time before the trial of the action remove the obstruction, and then the plaintiff may only recover the amount of the depreciation of the value of the use of his property up to the time the obstruction was actually removed and his property was restored to its normal condition. We have referred to this matter for the reason that we feel constrained to reverse the judgment, and therefore must remand the cause for a new trial. We desire to say, in passing this question of damages, that while in our judgment the value of the use of plaintiff's south show window is impaired at least to some extent, yet the value thereof is manifestly not impaired to the extent claimed by him, and the evidence considered as a whole is clearly contrary to his claim. Nor does it sustain the finding of the court upon that question. The north pillar is in fact the only thing that in any way affects the value of plaintiff's use of his storeroom or building.

He, however, also complains that the cornice of defendant's building projects out into the street some six feet or more and obstructs the view of his tenant on the fifth floor of his building. That, in our judgment, is carrying the complaint

against obstruction entirely too far. It was made to appear in this very case that the plaintiff has constructed and maintains an awning which projects into the street **8** farther than does defendant's cornice. Moreover, the cornice is elevated above the street some thirty-five or forty feet, while plaintiff's awning is only some eight feet, or such a matter, above the street. If, therefore, a tenant, or the owner, for that matter, in the second story of an adjoining building, wants to look down upon the street or sidewalk, his view will be interfered with and obstructed by plaintiff's projecting awning. This, however, is not such an impairment of the usefulness of a building as the law can recognize. If such were the case, all awnings, signs, and other obstructions would have to be removed. No appreciable or substantial damage can result from the mere projection of defendant's cornice into the street.

The plaintiff, however, insists that the defendant projected the north end of its cornice onto the wall of his building, and that the cornice now overlaps his wall to some considerable extent, as shown by the heavy black lines **9** marked "c" "c" on the plat. We know of no law authorizing one owner to extend a portion of his building onto that of his neighbor's building. This is a trespass pure and simple. When objection is made, the offending neighbor must be required to remove that part of the building which extends over or laps onto his neighbor's building or premises. The plaintiff objected to the projecting cornice. Indeed, it appears, from the letters written by him to the defendant, which were produced in evidence, that that was really the only thing which he objected to, and it is quite possible that, if the defendant had heeded the protest, this suit would have been avoided. Nor can we, under the law, limit the plaintiff to damages merely. Neither the Legislature nor the courts can authorize one person to appropriate or use another's property for any purpose, if the latter objects. Where the use of public property by one individual in some way causes injury or damage to the property of another, the latter may, under some circumstances, be limited to his legal remedy; but such is not the case where, as here, private property is by

another practically appropriated to private use. The defendant had no right whatever to extend the cornice of its building onto plaintiff's wall, and, having had no right to do that, it likewise has no right to maintain it there against the protest of the plaintiff. The defendant must therefore remove that portion of its cornice which extends laterally onto plaintiff's wall, and this it must do as soon as possible, and regardless of the ultimate determination of this action.

To avoid any misapprehension or misconception of the scope of this decision, we desire to add that by anything we have said or have omitted to say we do not hold, nor intend to be understood as holding, that any owner of abutting property may project his building into the street, whether such projection be for ornamental or for any other purpose, without being held legally liable to any other owner of property for any injury or damage such projection may cause to such other owner. The Legislature, and, when duly authorized by the Legislature, cities and towns, may to some extent, at least, authorize encroachment on public streets; but they may do that only to a reasonable extent, and then only subject to the right of any aggrieved person to sue and recover such damages as he may sustain by the encroachment.

Under our Constitution a right of action exists for any injury or damage to private property, and neither the Legislature nor the municipalities can interfere with that right; but where, as here, both equitable and legal remedies are given, we think courts have the power, and in proper cases, when justice and equity require it, should exercise the power, to limit the complaining party to his legal remedy, especially where the injury may be fully compensated by awarding damages, and where to do otherwise would inflict great and unnecessary expense upon his adversary. The city authorities should therefore refuse permission to project buildings into the streets. In such cases, however, as in most instances, prevention is better than cure. This trite expression is again forcibly illustrated by the case at bar. In Ogden City, the streets had been encroached upon by other buildings. Indeed, plaintiff's building projects into the street

more than a foot. It therefore, according to plaintiff's counsel, also constitutes a nuisance, and should be removed. Now, after the city had given defendant permission, although under protest of the city engineer, to project its building into the street, a most drastic remedy is invoked, and the enforcement thereof is demanded, for the sole reason that the defendant has transcended its legal rights in constructing its building as was done, and has thereby created a public nuisance. This case, therefore, merely is another one of those cases where the law remains unenforced by tacit or common consent until some one bolder than the rest of the community arises and insists upon a strict and literal enforcement of the law, regardless of the consequences that may be imposed upon the victim. There are instances where courts are powerless to temper the rigors of the law, but in view of the existing conditions the case in hand is not one of them. Neither do we wish to be understood as holding that the owners of buildings, or those leasing or occupying them, cannot use the street for awnings, signs, and other things which are usually placed on or project into the streets. Nor do we mean that the owner of a building may not ornament the same by extending the cornice or the roof thereof into the street, as was done. All these things must, however, be reasonable, and must not unnecessarily invade the rights of others.

For the reasons stated, the judgment and order of injunction are reversed. The case is remanded to the district court of Weber county, with directions to grant a new trial and to try the question of damages as if no trial had been had, and in accordance with the views herein expressed. In view, however, that the defendant is required to remove his cornice, and to that extent it is found to be in the wrong, no costs are awarded to either party.

STRAUP, C. J., and McCARTY, J., concur.