ROOT REFINERS, INC., v. ROBERTSON.

Opinion delivered February 27, 1928.

1. WATERS AND WATERCOURSES—POLLUTION OF RUNNING STREAM.—A finding of the jury that an oil refining company was liable for polluting the water in a running stream by a flow of oil from its refineries was warranted, where the evidence showed that the oil escaped from the refineries into a stream used by plaintiff for watering cattle, and that defendant had previously run its oil in another direction and might easily have diverted the oil from the stream.

2. WATERS AND WATERCOURSES—POLLUTION OF STREAM.—Pollution of water in a running stream by oil from a refinery was a temporary and not a continuing nuisance, and entitled a tenant to recover the depreciation in rental value caused by such pollution.

3. WATERS AND WATERCOURSES—DAMAGES.—A verdict for $550 for polluting, with oil from a refinery, a running stream used by a tenant as a watering place for his cattle, held sufficiently supported by competent evidence.

Appeal from Union Circuit Court, Second Division; W. A. Speer, Judge; affirmed.

STATEMENT OF FACTS.

R. H. Robertson sought to recover damages from Root Refineries, Inc., on account of the alleged pollution of a running stream of water on his dairy farm by the defendant discharging large quantities of oil from its refineries in the stream.

According to the evidence of J. M. Sheppard, R. H. Robertson was a nephew of his wife, and he gave Robertson the use indefinitely of 40 acres of land, on which there was a branch running all the year 'round. Robertson used the branch to water his dairy cattle. The defendant allowed oil to escape from its refineries and to flow into the stream. This rendered the water unfit for cattle to drink. It was fit for them to drink before it was polluted.

According to the testimony of R. H. Robertson, he had from 50 to 75 head of cattle in his dairy, and owned the forty acres of land upon which his dairy was located. There was no branch or running stream from which to water his cattle on his land. Dr. Sheppard gave him permission to use the running stream of water on 40 acres of land belonging to him, for the purpose of watering his cattle, and he had used it for that purpose. There was an ample supply of the water, and it was sufficient for the purpose of watering his cattle before it was polluted by the defendant allowing its oil to flow into the running branch. After this was done, the water became polluted and was not fit to be used for watering the cattle. The defendant began polluting the stream about April 1, 1925, and continued to do so up to the time suit was commenced on the 15th day of June, 1926, and up to the time of the trial on the 25th day of May, 1927. The rental value of the 40 acres on which the running stream was located was worth about $50 per month. For watering purposes alone it was worth $35 per month.

According to the evidence of the defendant the stream in question did not contain running water and never had been fit to use for watering cattle. The soil was boggy, and the water was slimy. Very little oil escaped from the refineries of the defendant onto the land in question.

The jury returned a verdict for the plaintiff in the sum of $550, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Marsh, McKay & Marlin,* for appellant.
*Ragsdale & Matheney,* for appellee.

HART, C. J., (after stating the facts).   According to the evidence adduced by the plaintiff, oil was allowed to escape from the refineries of the defendant and to flow into a running stream on 40 acres of land used by the plaintiff for watering the cattle on his dairy farm. The evidence for the plaintiff also shows that formerly the oil from the defendant's refineries had flowed in another direction, and that it might easily be diverted from flowing into the stream used by the plaintiff for watering his dairy cattle.   Under these circumstances the jury was warranted in finding that the defendant was liable for the pollution of the water in the running stream.   *Standard Oil Co. of Louisiana* v. *Goodwin,* 174 Ark. 603, 299 S. W. 2.

It is next insisted that the evidence showed that the pollution of the stream was a permanent injury to the property rather than a continuing nuisance, and that the court erred in instructing the jury that the measure of damages would be the depreciation in the rental value caused by the pollution of the stream by the defendant allowing the oil from its refineries to flow into it. We do not think the court erred in instructing the jury on the measure of damages.   According to the evidence for the plaintiff, the defendant had previously allowed the oil from its refineries to flow in another direction, and could easily have changed the flow of the oil from its refineries so as not to allow it to escape and flow into the running stream on the 40 acres of land used by the plaintiff in watering his dairy cattle.   The plaintiff did not own the land, but had a lease on it during the will of the owner.   He used the stream in watering his dairy cattle, and it was suitable for that purpose before it was polluted by the defendant allowing the oil from its refineries to flow into it.   Under these circumstances there was only a temporary nuisance to the land, and the measure of damages in such cases is the diminished rental or usable value of the land. *St. Louis S. W. Ry.*

*Co.* v. *Mackey,* 95 Ark. 297, 129 S. W. 78, and *Standard Oil Company of Louisiana* v. *Goodwin, supra.*

It is. next insisted that there is no legal evidence to establish the rental value of the land. According to the testimony of the plaintiff, he had between 50 and 75 head of cattle in his dairy. The running stream was amply sufficient to water these cattle before it was polluted by the defendant. The plaintiff had no other place to water them. The land belonged to the husband of his aunt, and he was given permission to use it as long as he wished to. He testified that the rental value of the land for the purpose of watering the cattle alone was $35 per month. The defendant polluted the stream by allowing the oil from its refineries to flow into it on April 1, 1925, and continued to do so until the time of the trial in May, 1927. In stating the rental value of the land on which the running stream was located, the plaintiff was not speculating upon the value existing under conditions which he had never observed, but was basing his opinion upon a state of facts known to him. Hence it cannot be said that the evidence is not legally sufficient to support the verdict, or that there is no competent testimony of the usable value of the land for the purpose of watering the cattle.

The judgment therefore will be affirmed.