Argued January 17; reversed February 15, 1939

# COLUMBIA RIVER FISHERMEN'S PROTECTIVE UNION et al. v. CITY OF ST. HELENS et al.

(87 P. (2d) 195)

*T. Walter Gillard,* of Portland (Wm. P. Lord, of Portland, on the brief), for appellants.

*John S. Coke,* of Portland (Griffith, Peck & Coke, of Portland, and Glen R. Metsker, of St. Helens, on the brief), for respondents.

BEAN, J. Plaintiffs allege, in substance, that they are fishermen engaged in fishing a drift below the

opening of sewers into said river, and said plaintiffs fish with gill nets and their nets are injured and rotted by reason of said pollution, and said plaintiffs intend to fish said waters in the future, and bring this suit for other fishermen fishing these waters, who are too numerous to be made parties plaintiff; that during all of the times mentioned, the defendant, the City of St. Helens, a municipal corporation, has constructed a sewage system consisting of trunk and lateral sewers, which are used by the citizens of said city for the purpose of disposing of domestic sewage and waste from toilets and household drains and from small industrial plants, and said defendant causes said sewage and waste to be discharged into the waters of the Columbia river, thereby polluting said waters and destroying fish life; that during said times the defendant Fir-Tex Insulating Board Company, a corporation, was and now is engaged in the business of manufacturing wood, paper and fiber products, and in connection therewith deposits directly from its plant into the Columbia river large quantities of chemicals, to-wit: sulphate and sulphite, sewage and waste products and waste matter such as minute fibers of pulp, which destroy fish life in said waters; that during said times, the defendant St. Helens Pulp & Paper Company was and now is engaged in the business of the manufacture of paper, and in connection therewith deposits directly from its plant into the waters of said Columbia river large quantities of chemicals, to-wit: sulphate and sulphite, sewage and waste products and waste matter such as minute fibers of pulp, which destroy fish life in said waters; that defendants deposit said sewage, chemicals and waste matter in the waters of said Columbia river and the waters of the Willamette Slough, and by reason thereof the said waters are being de-

stroyed for fishing purposes, and the fish and aquatic life are being destroyed, and the nets of plaintiffs are being destroyed, causing said nets to be rotted by the chemicals and foreign matter clinging to said nets, and salmon passing through said waters to the spawning grounds of the Willamette and Columbia rivers are so affected by the aforesaid wrongful acts of defendants in polluting said waters that the said salmon are unable to survive and pass through said waters and are killed, thus depleting the supply of salmon and the future supply of salmon, and causing irreparable injury to plaintiffs in their vocation as fishermen and the destruction of their nets, and further, that by reason of the aforesaid wrongful acts of defendants, combining and concurring together, salmon spawned or propagated in the spawning grounds of the Willamette and Columbia rivers and tributaries, are unable to survive the descent to the ocean by reason of the destruction of the delicate animals and plants which constitute the food of fish, and further, that the waters of said river and said slough in and about the city of St. Helens and the plants of defendants, and adjacent thereto, have become so poisoned and foreign substances have accumulated to such an extent, that salmon are unable to survive in said waters and to secure food on which to live, and the oxygen content of said waters is reduced to a point where fish are unable to survive; that by reason of the pollution of said waters, large quantities of foreign matter accumulate in the nets and lead lines of the nets of plaintiffs, thereby rotting and destroying their nets and lines, and that plaintiffs have been damaged in the sum of $3,000.

■ In considering the demurrer, the allegations of the complaint are deemed to be true.

Defendants contend that the plaintiffs are not authorized to maintain this suit, but if there is any right to maintain such a suit, it inheres in the state of Oregon.

■ Plaintiffs, as gill net fishermen, have a special interest, distinct from the public in fishing their drift which will be protected in a court of equity against destruction by acts of the defendants, which destroy their nets and interfere with their fishing: § 40-313, Oregon Code 1930; *Alsos v. Kendall,* 111. Or. 359, 227 P. 286; *State v. Hume,* 52 Or. 1, 95 P. 808; *Monroe v. Withycombe,* 84 Or. 328, 165 P. 227; *Strandholm v. Barbey,* 145 Or. 427, 26 P. (2d) 46; *Johnson v. Hoy,* 151 Or. 196, 47 P. (2d) 252; *Driscoll v. Berg,* 137 Or. 499, 293 P. 586, 1 P. (2d) 611; *Radich v. Fredrickson,* 139 Or. 378, 10 P. (2d) 352.

It is stated in the plaintiffs' brief that the lower court sustained the demurrer on the grounds that the complaint shows these plaintiffs have suffered no special and peculiar injury differing in kind from that suffered by the public, and therefore they cannot maintain this suit. The defendants rely largely upon this rule, and cite as authority for sustaining their position the decision in the case of *Kuehn v. Milwaukee,* 83 Wis. 583, 53 N. W. 912, 18 L. R. A. 553. Suffice it to say that this rule has not been followed in the state of Oregon, but a different rule has been adopted in numerous cases.

To delete the fish from the Columbia and Willamette rivers is to prevent the plaintiffs from pursuing their vocations and earning their livelihood fishing with gill nets in the portions of the rivers where they have been accustomed to fish.

■ Where the injury resulting from the nuisance is, in its nature, irreparable, as when destruction of the means of subsistence will ensue from the wrongful act,

courts of equity will interfere by injunction, in further-ance of justice and in the interest of the violated rights of property: 5 Pomeroy's Equity Jurisprudence, 4294, §1892.

■ There is a vital distinction between the rights of plaintiffs, who are accustomed to fishing in the river and have a license so to do, and the rights of other citizens of the state, who never fish in the river and do not intend to and are interested only in a general way in the benefit the state receives by the prosecution of a valuable industry, so that surely the plaintiffs have a special interest differing widely from the interest of the public in fishing in the portions of the river mentioned.

It is urged, in effect, by defendants that the plaintiffs and their right to pursue their vocation and earn a livelihood cannot be protected in a court of equity for the reason that they have no right to maintain the suit against the defendants, who claim no right except to violate the statute which plainly provides that the acts of the defendants, as set forth in the complaint, are illegal. The constitution provides that every man shall have remedy by due course of law for injury done him in his person, property or reputation: Art. I, § 10, Constitution of Oregon.

Numerous suits have been maintained in the courts of this state to prevent interference with the right of fishing. The difference between this case and the several others cited above is in degree. There is a greater degree of interference in the present case than in the cases heretofore prosecuted.

■■ Enormous quantities of salmon are found in the Columbia and Willamette rivers and are of extensive commercial value. The salmon industry has grown to great proportions and has been one of the principal

industries of the state of Oregon for many years. Thousands of citizens of Oregon earn their livelihood by catching salmon, and the business aggregates hundreds of thousands of dollars annually. All the citizens of Oregon have a common right to fish in the waters mentioned in the complaint, and to deprive any one citizen of that right is to violate the state constitution. On its admission to the Union, Oregon was vested with the title to the land under navigable waters within the state, subject to the public right of navigation and to the common right of the citizens of the state to fish: *Monroe v. Withycombe,* supra. In the latter case, where the opinion was written by Mr. Justice HARRIS, plaintiffs brought suit to enjoin the interference of fishing rights in the Columbia river. The case, in principle, is like the one at bar.

██ Fish are classified as *ferae naturae.* While the ownership of the fish in question, before they are taken, is in the State of Oregon, as far as ownership can be established, this suit is not brought for the purpose of obtaining the salmon but to protect the right of fishermen to pursue their vocation of fishing: *Monroe v. Withycombe,* supra.

■ It is suggested by defendants that the plaintiffs in this suit should not be joined, but that is the practice in this state.

*Strandholm v. Barbey,* supra, was a case brought to protect the fishing rights of plaintiff in the Columbia river, which had been interfered with by construction of a wharf and three fish traps by defendant. At page 442, of 145 Or., we find the language of Mr. Justice ROSSMAN:

"We are, therefore, satisfied that, since the wharf interferes with long-established fishing rights possessed by the plaintiff, he is entitled to a decree en-

joining the maintenance of the wharf beyond the line just mentioned."

In the case of *Driscoll v. Berg,* supra, a suit to restrain the defendant from constructing a fish trap, after having obtained a certificate from the master fish warden to the effect that he had paid the license and seal and sealion fees and was thereby licensed to operate said traps during the license year ending March 31, 1930, ten plaintiffs brought a similar suit to protect their rights of fishing. At page 502 of 137 Or., we read:

"Plaintiffs are gillnet fishermen and allege that the waters of the north bank of Grassy Island are used and navigated by gillnet fishermen; that from these waters annually many hundreds of pounds of salmon fish are caught by gillnet fishing; and that the traps mentioned, if allowed to be constructed and operated, will interfere with and prevent gillnet fishing there."

And at page 506 of the same volume, Mr. Justice KELLY records the following language:

"The citizens of Oregon have a common right to fish in the waters mentioned in the complaint, and to deprive any one citizen of that right is to violate the state constitution. The operation of a fish trap, therefore, which deprives fishermen from fishing with gillnets in navigable waters otherwise adapted thereto is in violation of section 20, article 1 of the state constitution * * *."

*Radich v. Fredrickson,* supra, is a case where thirty-three gill net fishermen, as plaintiffs, brought a suit to protect their rights and to restrain the construction of a fish trap and interfering with the rights of plaintiffs to fish. The syllabus reads: "Maintenance of fish traps should be enjoined where it prevented fishing with gill nets in adjacent navigable waters."

Section 39-603, Oregon Code Supplement 1935, prohibits the pollution of streams and public waters of the state by depositing any deleterious substance or any substances which do or may render the waters of a stream, or any other body of water, destructive of fish life.

Section 40-213, Oregon Code 1930, prohibits depositing deleterious substances, explosives or poisons, or using the same in the waters of the state.

■ The regulatory power of a state extends not only to the taking of its fish but also over the waters inhabited by the fish. Its care of the fish would be of no avail if it had no power to protect the waters from pollution: 11 R. C. L. 1047, § 35. See *Eagle Cliff Fishing Co. v. McGowan,* 70 Or. 1, 137 P. 766. We read in 11 R. C. L. 1039, § 26, as follows:

"But on the other hand, a member of the public who is specially injured by the maintenance of a nuisance, may abate it or maintain an equitable action for relief therefrom. Thus, if one exercising his right to take fish from a common fishery is obstructed by a nuisance, he may abate the obstruction."

The record shows that the City of St. Helens, after being served with summons, appeared and filed a motion to strike certain matters from the complaint and for the plaintiff to make the complaint more definite and certain, with relation to the damages claimed. After that nothing appears to have been done in regard to the City of St. Helens and no decree was rendered in favor of or against the city. Hence this opinion does not relate to the City of St. Helens.

■ Under the allegations of the complaint, the plaintiffs cannot recover $3,000 damages against the

several defendants. The allegation in that respect may be material in indicating the injury for which the injunction is sought. But an injunction will be sustained in such case against all of the wrongdoers. It is well-settled that one may maintain a suit in equity to prevent repeated trespasses, and the injunction should relate to a continuation of the injury to the nets: *Miller v. Highland Ditch Co.,* 87 Cal. 430, 25 P. 550, 22 Am. St. Rep. 254; Gould on Waters (3d Ed.) 437, § 222; *Smith v. Day,* 39 Or. 531, 64 P. 812, 65 P. 1055; 1 Sutherland on Damages, (2d Ed.) 267, § 140.

▆▆▆▆ The jurisdiction of equity courts to grant relief by injunction in a proper case against a nuisance, either public or private, is undoubted and well-settled, and wherever the circumstances of the case are such that adequate redress cannot be obtained elsewhere, equity will afford relief: 14 Enc. of Pl. & Pr. 1118; 1 Am. & Eng. Enc. of Law, (2d Ed.) 64. It is regarded as well-settled that the fact, that an injury or damage is inflicted by an act or thing that is, in its nature and in fact a public nuisance, will not prevent a recovery at the suit of an individual, if that individual has suffered a special or particular damage therefrom, different from that which is common to all: 2 Wood on Nuisances, 886, § 680.

It is stated in Joyce on Law of Nuisances, 623, § 430, that in order to sustain a private action in cases of a public nuisance, some special privilege or right in person or property, as distinguished from the public right, must have been actually violated, or there must exist an imminent or justly apprehended danger. The damage should be material and the injury particular, special, and peculiar beyond and distinct from that suffered by the public. In the case at bar the privilege or right of plaintiffs to fish is distinguishable

from the right of the public, as stated above. It is certainly a material and special injury to the plaintiffs to be deprived of the privilege of fishing in the stream where they have been in the habit of fishing. See *Taylor Sands Fishing Co. v. State Land Board,* 56 Or. 156, 108 P. 126.

■ The provision for a statutory penalty for polluting a stream is not a bar to prosecuting a suit to prevent the same: 26 C. J. 619, § 36.

■ The defendants exert themselves in an endeavor to make an excuse for polluting the streams on account of inconvenience. It has been about 18 years since the acts alleged in the complaint were declared unlawful, and there is no indication in this case that they have made a commencement in trying to comply with the law. Pursuant to the initiative measure entitled "Water Purification and Prevention of Pollution Bill," enacted by the people November 8, 1938, the sanitary authority is to have the right to intervene in the interest of the public and urge that the injunctive relief should not be made permanent until the defendant has been given a sufficient time in the court's discretion in which to remedy and correct the condition set forth in the complaint.

■ We think that the complaint is not vulnerable to a demurrer and that the demurrer should be overruled. However, we believe that the complaint could be improved, upon motion, by alleging the licenses of plaintiffs to fish. It might become material in the consideration of the case. Plaintiffs should be allowed to apply to the trial court for permission to amend their complaint in this respect.

■ The defendants quote from 14 R. C. L. 354, § 57, as follows:

"Where an injury is trivial equity will not ordinarily interfere by injunction, even in cases where the right has been established at law; but in order to justify such interposition the injury complained of must be substantial, and not merely technical and inconsequential."

The injuries complained of by the plaintiffs are not trivial, and, as we have endeavored to show, the fishing rights, which are alleged to have been interfered with, are of the greatest moment, and the destruction of the fishing industry will amount to thousands of dollars and prevent a large number of people from pursuing their usual vocation of fishing.

After a careful examination and consideration of the other cases cited by defendants, we are firmly convinced that our position is correct.

Plaintiffs have no adequate remedy at law.

The decree of the circuit court dismissing the complaint as to the defendant Fir-Tex Insulating Board Company and as to the defendant St. Helens Pulp & Paper Company, as against the plaintiffs who have appealed, is reversed and the cause is remanded to the trial court with instructions to overrule the demurrer of said defendants, the Fir-Tex Insulating Board Company and St. Helens Pulp & Paper Company, and take such further proceedings as may be deemed appropriate not inconsistent herewith.

———

ROSSMAN, J. (dissenting). The complaint, I am satisfied, cannot support a decree awarding an injunction. Only the tenth, being the last of its paragraphs,

mentions the appellants. Before giving attention to that paragraph note will be taken of the others. The first paragraph alleges that the Columbia River Fishermen's Protective Union is a corporation; and the second, after averring that the members of that organization are interested in fishing, describes the purposes of the organization as the conservation, propagation and protection of salmon in the Columbia River. The third avers that the City of St. Helens, one of the three defendants, which, however, is not a respondent, empties sewage into the Columbia River, "thereby polluting said waters and destroying said waters for fish life." The fourth and fifth paragraphs, respectively, allege that the Fir Tex Insulating Board Company and the St. Helens Pulp & Paper Company, the other two defendants (respondents) deposit waste materials from their plants into the river. This waste material consists of "sulphate and sulphite, sewage and waste products, and waste matter such as minute fibers of pulp." The sixth paragraph alleges that the foreign material deposited by the three defendants ruins the water "for fishing purposes" and that it destroys "fish and aquatic life." This paragraph further avers that these materials destroy "the nets of plaintiff's members by causing said nets to be rotted by the chemicals and foreign matter clinging to said nets." After averring that the presence of these noxious matters in the water renders it impossible for salmon to pass to the spawning grounds, and for "those spawned or propagated in the spawning grounds" to make their way to the ocean, this paragraph adds that the "plaintiff and plaintiff's members in their vocation as fishermen" have been irrevocably injured. The seventh paragraph, after claiming that "by reason of the construction of the Bonneville Dam on the Columbia River

the spawning and nesting grounds of salmon on the Upper Columbia River will be cut off and destroyed,'' alleges that the tributaries of the Lower Columbia will be insufficient for spawning and propagating purposes unless the water in them is kept pure. It avers that unless purity is maintained ''the members of plaintiff's organization will be unable to earn a livelihood from their vocation as fishermen.'' The eighth paragraph alleges ''by reason of the pollution of said waters as alleged large quantities of foreign matter accumulate in the nets and lead lines of the nets of plaintiff's members, thereby rotting and destroying said nets and lines, and causing plaintiff's members to sustain large damages, and plaintiff maintains this suit on behalf of its members whose names are too numerous to be made parties plaintiff.'' After describing the plaintiff's members as fishermen, cannery workers, boat pullers, etc., it avers that they have already been damaged by the acts of the defendants ''in excess of the sum of $3,000.00.'' The ninth paragraph avers that the defendants should be restrained from polluting the waters of the river, and that the plaintiffs have no adequate remedy at law.

So far the individual plaintiffs have not been mentioned in the complaint. The tenth paragraph is the only one which mentions them. We now quote it in full:

''That the individually named plaintiffs are fishermen and engage in fishing a drift below the opening of said sewers into said river, and the said plaintiffs fish with gill-nets and their nets are injured and rotted by reason of said pollution, and said plaintiffs intend to fish said waters in the future, and bring this suit for other fishermen fishing these waters who are too numerous to be made parties plaintiff hereto, but whose nets are being damaged by said pollution and whose

vocation is being destroyed by the pollution of said waters, as hereinbefore alleged."

This is not an instance where the attack is made upon the complaint in the midst of a trial or after judgment was obtained. In this instance the attack was made immediately after the complaint had been filed. It was begun by the filing of respondents' demurrer. Since the corporation is not an appellant, and since the plaintiffs do not allege that they are members of it, the various averments concerning it are of no consequence in the consideration of this appeal. The nine individuals who are the appellants must sustain the complaint, if it can be sustained at all, by reason of the averments which concern them. It has been many times declared that on demurrer a pleading is strictly construed against the pleader. Doubts are resolved against him. Those who drafted the pleading are the ones who selected its language, and accordingly they had the opportunity of making its meaning as clear and the statement of their cause as strong as the facts justified. No justification exists, therefore, for infusing into this complaint something under the supposition that the pleaders possibly intended its averment. Likewise, since courts issue injunctions with great caution and only where a necessity therefor is clearly shown, the complaint seeking such a remedy should set forth facts in unequivocal language which shows a clear right to that drastic remedy.

Having in mind the principles just mentioned, let us revert to the tenth paragraph. It will be observed that the plaintiffs do not allege that they possess a license to fish. Nor do they aver that they are residents of this state; in fact, it does not even appear that they are citizens of the United States. Their only description of themselves is contained in the single word

"fishermen"; but how long they have been fishermen is not disclosed. They state that they "engage in fishing a drift below the opening of said sewers," but how far below, whether a few hundred feet or many miles, is not disclosed. Although the complaint mentions not only the Columbia and Willamette Rivers, but also their tributaries and the Willamette Slough, the tenth paragraph does not aver in which of these bodies of water the plaintiffs fish. In fact, if it should develop that their drift is in some part of the extensive bays at the mouth of the Columbia, the above averment would still be true. The complaint does not allege how long the plaintiffs have been fishermen. Their statement that they "engage in fishing a drift below the opening of said sewers" could be true if they began fishing the hour when the complaint was filed. Although the complaint alleges that the members of the aforementioned Columbia River Fishermen's Protective Union are engaged "in taking and catching salmon," and that the noxious deposits destroy salmon going to and from the spawning grounds, it does not allege that the individual plaintiffs fish for salmon; nor does it state what kind of fish they seek to catch. Although they aver that their nets are injured and rotted by reason of noisome substances, the size and value of the nets are not mentioned. A further glance at this paragraph will indicate that the plaintiffs nowhere directly allege that a single fish with which they were concerned was lost to them by anything which the defendants did. They do not allege in terms of dollars and cents that they have been damaged.

The matter before us is one of great importance, not only to the plaintiffs if their source of livelihood is being destroyed, but also to the defendants and to every member of the public affected by the fish and

pulp industries. That being true, it is doubly desirable that the complaint should possess the definiteness of meaning which is commonly exacted even in causes affecting less individuals and seeking only ordinary remedies.

In *Kuehn v. Milwaukee*, 83 Wis. 583, 53 N. W. 912, 18 L. R. A. 553, an injunction was denied under facts even more favorable to the plaintiff than those before us. That plaintiff for more than thirty years had been a fisherman in Lake Michigan, and the defendant, the City of Milwaukee, had adopted the practice of dumping garbage into the water near his nets, thereby driving the fish from his fishing grounds and actually, upon one occasion at least, killing fish in his nets. The city's practice was described as a public nuisance. The court, after pointing out that the place where the plaintiff fished was a common fishery in which he had no private interest, like that, for instance, of a riparian proprietor, held that since he suffered only such injuries as all other fishermen were subjected to, he was not entitled to an injunction. But in Oregon an individual who suffers a special injury may maintain a suit, even though the entire public also suffers some loss by reason of the purported wrong; but the injury suffered by the individual must be substantial, and not technical. The substantial character of the injury needed to support a suit of this character is well stated in the following taken from 32 C. J., p. 49, § 29:

"Subject to some limitations hereafter considered, in order to entitle a person to injunctive relief, whether prohibitory or mandatory in its nature, he must establish as against defendant an actual and substantial injury; * * * In other words, a complainant is not entitled to an injunction where he can show no injury to himself from the action sought to be prevented,

where the damage is so small and the right so unimportant as to make the case a trivial one, or is technical and inconsequential, or fanciful and sentimental, or a mere inconvenience, or is merely nominal, theoretical, or speculative, even though an action at law might be maintained for the same injury. In applying this rule courts have refused injunctions to prevent the building of a bridge, a railroad, or a sewer; *  *  *  "

The only damage which the respondents allege they suffered is the following: "Their nets are injured and rotted by reason of said pollution," but, as already indicated, the size and value of the nets are not disclosed, nor the extent of the injury. It is not even averred that a single fish was ever caught in one of those nets. Surely such an indefinite averment is not a sufficient compliance with the demands of the situation.

I dissent.

Lusk, J., concurs in this dissent.