368 P.2d 912

**Howard ANDERSON et al., Plaintiffs and Appellants,**

**v.**

**UTAH COUNTY and the Board of County Commissioners of Utah County, Defendants and Respondents.**

No. 9549.

Supreme Court of Utah.

Feb. 23, 1962.

**100**

Allen L. Hodgson, Payson, Clarence M. Beck, A. Park Smoot, Salt Lake City, for appellants.

Richard M. Taylor, Spanish Fork, Arnold Roylance, Utah County Attorney, Provo, for respondents.

HENRIOD, Justice.

Appeal from a judgment refusing to reinstate 37 county employees who were fired by a newly-elected Republican County Commissioner on the ground that such employees were members of the Democratic Party. Affirmed, no costs on appeal awarded.

The employees involved had contributed to a fund for the purpose of litigating the Commissioner's right to take office after his election. This, of itself, should suffice to affirm the trial court, on the basis of employment termination for cause, for obvious hostility to the Commissioner.

Nonetheless, the nub of this case is whether the employees could be discharged because they were Democrats, which problem we meet head on. Reinstatement allegedly was sought under the so-called "Right to Work Law," [1] which interdicts against refusal to employ one for the sole reanson that he is or is not a member of a

---

1. Title 34, Utah Code Annotated 1953, as amended (see 1961 Pocket Supplement). "34–16–4. Agreements against public policy.—Any express or implied agreement, understanding or practice between any employer and any labor un-

"labor union, labor organization *or any other type of association*." It is urged that a political party is an "association" coverable by the Act.

A volume could be penned about the traditions and history of our bipartisan system of government. Another could be written about management-labor relations from the early craft era to and beyond Samuel Gompers' time, to date. Neither is necessary. The so-called "Right to Work Law" is an integral part of Title 34, Utah Code Annotated 1953, as amended. A casual perusal thereof quickly will reflect a definitive legislative design to crystallize, alleviate and settle differences in industrial pursuits, between management on the one hand, and artisans it employs to get things done industrially, on the other hand. The numerous sections and subsections of the Act obviously point up a legislative intent to deal with problems presented on an industrial stage, whose principal actors are not members of political parties, where membership by those who aspire thereto, may be attained without condition, obligation or any allegiance whatsoever, save as chosen to be given, and then only pro tempore.

If ever the doctrine of "ejusdem generis" or "noscitur a sociis"[2] were significant, it

---

ion, labor organization or any other type of association, whereby any person not a member of such union, organization or any other type of association shall be denied the right to work for an employer, or whereby membership or nonmembership in such labor union, labor organization or any other type of association is made a condition of [such] employment or continuation of employment by such employer, or whereby any such union, organization or any other type of association acquires an employment monopoly in any enterprise or industry, is hereby declared to be an illegal combination or conspiracy and against public policy."

2. Memorial Gardens, etc. v. Love, 5 Utah 2d 270, 300 P.2d 628 (1956), wherein speaking of general terms following the particular, we said "Such general terms cannot be given a literal meaning independent of the context in which they are used. They must be understood in the light of and as characterized by the purpose of the statute, and *viewed in relation to the entire context.* When specific terms are followed by general terms, the latter are limited to things of like kind." See authorities therein cited. Again, in Hatch Co. v. Public Service Commission, 3 Utah 2d 7, 277 P.2d 809 (1954), we said that "Under the rule of noscitur a sociis, when there is uncertainty about intent, the meaning of doubtful words or phrases is to be determined in the light of associated words and phrases." (Citing 2 Sutherland, Statutory Construction, 3d Ed., 393.) See also Ballentine's Law Dictionary 424, 883–4; 50 Am.Jur. 243, et seq.; Stone v. Salt Lake City, 11 Utah 2d 196, 356 P. 2d 631 (1960) where we said "The familar and universally recognized rule is that general terms following specific terms are interpreted to mean things of like character." It is to be noted that the statute here involved uses the language "any *other* type of association." In Kirkley v. Portland Elec. Power Co., 136 Or. 421, 298 P. 237 (1931), it was said: "In construing * * * the statute, we apply the rule of ejusdem generis, in accordance wherewith such terms as 'other,' 'other thing,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly given a restricted meaning and limited to articles of the

becomes so here, and we are convinced that "any other *type* of association" has to do with a type having the attributes of *labor* organizations, not a *political party*.

We have before us a case where the employment of dicta dehors the specific problem involved well might lead us into a future forest obscurative of its trees. If the upcoming legislatures deign to make synonymic the phrases "labor union," "labor organization" *and* "political party," as some sort of transigent to the tugging of socio-economic forces, this court, in a proper case will meet such event and its constitutional ramifications. Until then, we espouse the conclusion of the trial court that "While it may be said that a political party is an association, it is perhaps more accurate to say that it is a group which takes unified action to further a political end. It is a medium through which the individual citizen in a

democracy such as ours undertakes to express his will in government."

Sometimes people vote to oust an administration as well as to elect one. So doing, it would be absurd [3] to say that having ousted one, by legislative fiat the latter's loyal disciples must be perpetuated in their positions with the obvious frustration of the electorate's expressed desire.

In short, we believe, and hold, that the phrase "any other *type* of association" does not include political parties, but is adjective and akin to, and inclusively complementary to the phrases "labor union" and "labor organization," as we are convinced was contemplated by the legislature under the so-called Right to Work Law. (Emphasis ours.)

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.

---

same nature as those previously described." To the same effect: Bigger v. Unemployment Compensation Comm., 4 Terry 274, 4 Del. 274, 46 A.2d 137 (1946), Southern Ry. Co. v. Columbia Compress Co., 4 Cir., 280 F. 344 (1922), United States Fidelity & Guaranty Co. v. Thomlinson, 172 Or. 307, 141 P.2d 817 (1943).

3. In such cases, we have had this to say in Rowley v. Public Service Comm., 112 Utah 116, 185 P.2d 514 (1947): " * * * when the legislative intent is not clear and certain, and a literal interpretation of the language of the statute gives an absurd result, then the court is justified in searching the enactment for further indication of legislative intent. These indications can be determined by

the wording of the act or by considering the underlying reasons and necessity of the amendments and the purposes to be accomplished." Apropos of such language is the statement in 50 Am.Jur., Statutes, Sec. 377, p. 385, that "A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits, and it is a general rule that where a statute is ambiguous in terms and fairly susceptible of two constructions, the unreasonableness or absurdity which may follow one construction or the other may properly be considered * * *. Unreasonable, absurd, or ridiculous consequences should be avoided."