CARSON v. HERCULES POWDER Co.

5-3898                    402 S. W. 2d 640

Opinion delivered May 16, 1966
[Rehearing denied June 6, 1966.]

*Cecil C. Matthews, Macom & Moorhead,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

HUGH M. BLAND, Justice. This is a suit seeking injunctive relief and damages. The record is voluminous, containing 375 pages of testimony. The facts are substantially as follows.

Appellant, Kelsey Carson, is a commercial fisherman and has fished approximately a 30-mile stretch of Bayou Meto, a non-navigable stream, since 1927. He claims to have permission of the riparian owners along this stream, mostly oral permission with the exception of a written agreement with one Nelson Crum. Since 1951 he has lived on the bank of the stream in his own house located on the farm of W. W. Walton. He does not own any land but has an oral agreement with Walton to live on his land for the rest of his life. Although he lists the riparian owners with whom he has permission to fish, the record does not disclose actual ownership of the land by them. The appellant sells fish commercially in wholesale lots of from 2,000 to 3,000 pounds. He was required to obtain from the Arkansas Game and Fish Commission, in addition to the regular fishing license, a hoop net and wings license at an annual cost of $260.00.

Appellant claims that the appellee, Hercules Powder Company, in the operation of its plant near Jacksonville, Arkansas, has polluted Bayou Meto by discharging into it phenolic materials causing fish kills, creating a rotten egg odor, and making the fish unedible and unsalable.

Hercules took over the operation of the plant at Jacksonville in January 1962. Because of the alleged

pollution appellant did not procure a fishing license in 1961-62-63-64-65. He testified that fishing was his sole occupation but during the years he did not fish he repaired his nets, worked on boat rows, net sets, and other paraphernalia. Appellant is 55 years old and in good health. His fishing license permitted him to fish anywhere in the State of Arkansas. It was stipulated that appellant's federal income tax returns showed that he earned $1,741.47 in 1956; $1,742.29 in 1957; $4,090.40 in 1958; $1,222.41 in 1959; $2,549.33 in 1960; $28.92 in 1961; and $1,958.72 in 1962.

Exhibits introduced into evidence show the discharge of effluent into Rocky Creek from the Hercules plant and pictures of dead fish along the stream.

Marvin L. Wood, director of the Arkansas Pollution Control Commission, testified that he conducted studies, examinations and investigations of Bayou Meto and investigated fish kills in 1959, 1963 and 1964. This study resulted in a hearing before the Commission on April 24, 1963 which culminated in a cease and desist order by the Commission on the 29th of May, 1963, and appears as Exhibit No. 16. A transcript of the proceedings before the Commission was admitted as Exhibit No. 17. In the above order the Commission found that Hercules Powder Company is discharging large quantities of industrial waste into the waters of Bayou Meto in the vicinity of Jacksonville, Arkansas, containing chemical substances in quantities highly toxic to fish and other aquatic life; that the foregoing constitutes pollution within the meaning of Act No. 472 of the Acts of Arkansas, 1949, [Ark. Stat. Ann. § 82-1902 et seq (Supp. 1965)] in that the discharge of said industrial waste into the waters of Bayou Meto has created a public nuisance and has rendered such waters harmful and detrimental to public health, safety and welfare and to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, and to fish and other aquatic life. In the order Hercules was directed to submit to the Arkansas Pollution Control Commission pri-

mary plans and specifications within 120 days from the date of the order and final plans within 45 days thereafter for the construction of such treatment facilities as might be necessary to abate the aforesaid pollution. According to the record this order has been fully complied with by Hercules and for that reason the matter of injunctive relief is not before us on appeal. The witness, Wood, further testified that the Commission was unable to determine the cause of the fish kill in the latter part of 1963 and the one in July of 1964. Wood also testified that the runoff of water from agricultural land is a factor in the presence of phenolic materials in lakes and streams and that odor is not a reliable scientific test of pollution as a sensibility to odor levels will vary. It was his opinion that the rotten egg gas odor that was mentioned by other witnesses was probably due to hydrogen sulphide that occurs at the bottom levels of lakes caused by the decomposition of organic material and that this odor would have no connection with the waste from Hercules; that after a heavy rainfall we expect to get runoff from agricultural lands containing chemicals; that in the fall of 1963 it was the conclusion of the Commission that the runoff from farm land was probably responsible for the fish kill; that at the time the test of the water did not reveal any phenolic material and it was the opinion of the Commission that Hercules was not responsible for this kill; that fish sometimes die from reasons that we cannot determine; sometimes thermocline dissolves the oxygen and the fish die from the lack of it; a sudden cold rain causing a thermal shock will also kill them; some kills are caused by decaying vegetation being swept into the stream by heavy rainfall; pollution caused by the operation of Hercules has been substantially eliminated and there is no toxic effect that will kill fish. This testimony was substantiated by other witnesses.

At the conclusion of the plaintiff's testimony and upon motion by counsel for the defendant for dismissal, the chancellor held that the testimony was insufficient to justify the issuance of an injunction and after addi-

tional testimony and argument of counsel, he declined to award any damages to the plaintiff.

The Arkansas Pollution Control Commission, after a full and complete hearing, found that the appellee did pollute the waters of Bayou Meto creating a public nuisance and rendering the waters harmful and detrimental to fish and other aquatic life. According to the record the appellee has corrected this condition and the matter of injunctive relief is not before the court. This, however, does not relieve the appellee of liability for damages to appellant for loss of profits and damage to his business. He had a substantial investment in a business that had been in operation since 1927. It was his only means of livelihood. By polluting the water of Bayou Meto, the appellee prevented the operation of this business for the years 1963, 1964 and 1965 and by doing so became directly liable to appellee for any damage to his business and loss of profits. *Root Refineries* v. *Robertson,* 176 Ark. 353, 3 S. W. 2d 57; *McLaughlin* v. *City of Hope,* 107 Ark. 442, 155 S. W. 910. In *St. Louis Iron Mountain & Southern Railway Co.* v. *Hall,* 71 Ark. 302, 74 S. W. 293, this court quotes with approval Sedgwick on Damages, § 69, as follows:

"Any one having an interest in land is liable to suffer injury in respect to his right; and accordingly, if his right, however limited it be, is injured, he may recover for compensation equal to his individual loss. The general rule may be said to be that the extent of the injury to the plaintiff's proprietary right, whatever it may be, furnishes the measure of damages. The owner of a freehold may recover for an injury which permanently depreciates his property, while a tenant, or one having only a possessary right, may recover for an injury for the use and enjoyment of that right."

On the question of damages the appellant contends that he is entitled to $2,500.00 per year for the years 1963, 1964 and 1965, or a total of $7,500.00 for damages

to his business and loss of future profits. The only evidence in the record as to his earnings is his federal income tax returns from 1956-1962 inclusive. These returns were properly admitted into evidence for the purpose of assisting the court in determining the amount of damages to which appellant might be entitled. In the case of *Coca-Cola Bottling Company of Southeast Arkansas* v. *Jones,* 226 Ark. 953, 295 S. W. 2d 321, this court approved an instruction as to measure of damages for loss of earnings of a self-employed person as ''the damages which he may have sustained on account of the loss of net remuneration or earnings from his business.''

The court below did not go into the question of damages and we believe, in view of our holding that the appellee is liable to appellant, that the court should further explore the amount of damages the appellant has suffered from loss of profits and damages to his business.

The trial court sustained the defendant's motion to dismiss at the close of the plaintiff's case. We find such ruling to have been erroneous. Under Ark. Stat. Ann. § 27-1729 (Repl. 1962) the cause must be remanded to the trial court for proof and development and for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARRIS, C.J., concurs.