266 P.2d 497

PETERSON

v.

PUBLIC SERVICE COMMISSION et al.

No. 8096.

Supreme Court of Utah.

Jan. 29, 1954.

Pugsley, Hayes & Rampton, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., Peter M. Lowe, Asst. Atty. Gen., Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for respondents.

CROCKETT, Justice.

Proceeding to review an order of the Public Service Commission permanently suspending tariffs filed by petitioner, Wally's Motor Line (hereinafter called Peterson) listing rates for transportation of commodities between Salt Lake City and Provo, Utah, via Heber City. The rights herein involved hinge upon the language of Certificate of Convenience and Necessity No. 1001 which authorizes petitioner:

"* * * to operate in intrastate commerce within the State of Utah as a motor common carrier of commodities generally *between Salt Lake City, Utah, and Provo, Utah* over the following highways:

"(a) Between Salt Lake City and Heber City over U. S. Highway 40;

"(b) Between Heber City and Provo over U. S. Highway 189;

"Serving all points except Olmstead intermediate between Salt Lake City and Provo over said highways and serving the off-route points of Park City, Midway, Hot Pots, Daniels, Center Creek and Wallsburg, with permission to use for convenience of travel only U. S. Highway 91 between Provo and Salt Lake City and the Orem Cutoff over Utah Highway 52, but excluding local service between Salt Lake City and Provo over U. S. Highway 91." (Italics ours.)

The Commission issued Peterson this Certificate on June 30, 1952. In his opera-

tions under it, his tariffs contained rates for all intermediate points, but no "through" rates from Salt Lake City to Provo. About nine months later he filed a supplemental tariff for approval by the Commission containing such rate. Defendant, Carbon Motorway, Inc., a competing carrier whose rights Peterson had acquired as to this operation, filed objections contending that the petitioner's Certificate does not authorize such haul.

The Commission made an order suspending the effective date of the supplemental tariff until June 1, 1953, and set an investigation hearing "concerning the lawfulness of the route, rate, charges, rules and regulations and practices stated in said tariff" pursuant to Sec. 54-6-4, U.C.A.1953. At the hearings had thereon, no question was raised that the rates proposed were excessive, discriminatory, or in any way unfair or improper. Evidence was adduced showing the origin of this authority, the detail of which is unimportant except that none of the predecessors of either Peterson or Carbon had the right to haul between Salt Lake City and Provo via Heber City. On the contrary, such right was specifically excluded in most of these prior certificates. It is significant that in a consolidation with a former competing carrier, Rio Grande Motor Way, Carbon was issued a new Certificate No. 992 on March 1, 1952, which is the first of these Certificates containing the language as underscored in the Certificate hereinabove quoted " * * * be-

tween Salt Lake City, Utah, and Provo, Utah, * * *." Pursuant to some dispute and negotiation as to Carbon's rights, the latter agreed to sell its authority for this operation, which Peterson bought for $4,-500. The Commission approved this transaction and issued Peterson said Certificate.

Despite the plain language of its own Certificate No. 992, and that of Peterson's, Carbon sought to show that it had always regarded the Certificate as authority to transport only between intermediate but not the terminal points of the route. It contends that it had no such right; that it could transfer to Peterson no greater rights than it possessed; and that the Commission had not been requested and did not in fact expand the rights in the transfer to Peterson. In support of the argument that Peterson also so understood the Certificate, Carbon points to the fact that it waited for nine months before attempting such operation, arguing that the latter deliberately waited until the order approving the Certificate had become final before doing so.

It is true that ordinarily operating rights are not expanded upon transfer or consolidation, and this could not properly be done without notice to competing carriers and the public. It is further to be observed that from the history of these operating rights there is indeed a serious question whether the Commission in issuing Certificate No. 1001 intended to grant petitioner rights between Salt Lake City and Provo via Heber City. But the language permit-

ting transportation, "* * * of commodities generally between Salt Lake City, Utah, and Provo, Utah, * * *" was in Certificate No. 992 for which Peterson bargained and paid; after notice and hearing it was also included in petitioner's Certificate No. 1001.

Carbon argues that "a provision in an authority that a carrier may serve between two points does not necessarily mean that he may serve to and from such points." Such attempted refinement does violence to the ordinary meaning of words. In fact it would deny rights to Carbon which it exercises under its own Certificate from the Commission. It should hardly require citation of authority that an operation "between" two cities does not exclude them.[1]

It is unquestioned that the Commission has continuing and supervisory jurisdiction over the Certificates and operations of common motor carriers;[2] and it is also endowed with the prerogative of correcting mistakes under 54–6–20, U.C.A.1953 which provides that it, "* * * may * * * for good cause, and after notice and hearing, suspend, alter, amend or revoke any certificate * * * issued by it * *." However such is not the action which the Commission under took here.

Two of its members, Chairman Bennett dissenting, purported to "clarify" Certificate No. 1001 by making a "finding" that such Certificate "does not grant or confer authority between Salt Lake City and Provo and between Provo and Salt Lake City, by way of Heber City." In justification of this action Carbon cites the time-honored rule that this Court will not disturb a finding of fact made by the Commission on any competent evidence.[3] This was obviously not a "finding" but was an attempted conclusion of law based upon an interpretation of the document.

Unless there is some uncertainty or ambiguity there is no basis for interpretation or clarification[4] of the certificate. If it were permissible to go back of the language and contradict its plain terms, intolerable confusion and uncertainty would exist with regard to operating rights.

It is the prerogative of this Court to determine whether the Commission regularly pursued its authority.[5] Under Sec. 54–6–4, U.C.A.1953 vesting in the Commission power to regulate motor carriers we do not find any authority either directly, or reasonably incident thereto, by which the Commission could arbitrarily refuse to approve a tariff, and, thus nullify the rights

1. Morris & E. R. Co. v. Central R. Co., 31 N.J.L. 205, 206 and 213.

2. Sec. 54–6–4, U.C.A.1953; Sec. 54–6–11, U.C.A.1953.

3. Sec. 54–7–16, U.C.A.1953.

4. 73 C.J.S., Public Utilities, § 57(c), page 1133.

5. Sec. 54–7–16, U.C.A.1953.

328

a carrier possesses under a Certificate of Convenience and Necessity.

Reversed and remanded.

McDONOUGH and WADE, JJ., and JEPPSON and LARSON, District Judges, concur.

WOLFE, C. J., being disqualified does not participate herein.

HENRIOD, J., having disqualified himself does not participate herein.