277 P.2d 809

**W. S. HATCH CO., a Utah corporation, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah; the Denver and Rio Grande Western Railroad Co., a Delaware corporation; the Union Pacific Railroad Company, a Utah corporation; and Guy Prichard, d/b/a Guy Prichard Transfer, Defendants.**

No. 8182.

Supreme Court of Utah.

Dec. 14, 1954.

8

Marr, Wilkins & Cannon, and Mark K. Boyle, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., David E. Salisbury, Bryan P. Leverich, Fred L. Finlinson, Salt Lake City, for respondent.

CROCKETT, Justice.

The recent feverish search for uranium as a source material of atomic energy has given rise to extensive development in uranium mining in Utah. This has occasioned the necessity for the transportation of large quantities of sulfuric acid which is used in the processing of that ore. This was of course not foreseen, either by the carriers or by the Public Service Commission. The instant proceeding is in essence a contest between two carriers for the right to transport such acid.

Petitioner, W. S. Hatch Co., heretofore held a limited authority to transport commodities as common carrier by truck which included, inter alia, the right to haul acid within a limited radius around Salt Lake City as described in his certificate. He applied for a further Certificate of Convenience and Necessity to haul acids in bulk, including in tank vehicles, throughout the state. Guy Prichard, defendant here, appeared as protestant claiming that a Certificate of Convenience and Necessity No. 741, issued to him in 1946, hereinafter referred to in more detail, included rights to haul acid to and from several counties, substantially duplicating rights for which Hatch was applying. With this contention Hatch joined issue and challenged Prichard's right to appear as protestant.

After hearing, the Commission on February 23, 1954, issued its Report and Order extending Hatch's authority to haul acid to the adjacent counties of Davis and Weber, but denied his application in other respects, although it expressly found Public Convenience and Necessity required additional transportation of acid to the southeastern part of the state.

The Commission based its denial of Hatch's application, and also its ruling that Prichard had status as a protestant in the proceeding, upon the premise that Prichard's authority includes the right to transport acids in bulk and in tank cars. The Commission, however, suggested that it has serious doubts as to whether such

ruling is correct as indicated by a notation (footnote 1) to the opinion:

" * * * Since there may be some question as to the language of said certificate in this regard and since Prichard has been transporting acid in bulk since 1946 under the assumption that his authority covered such transportation, it may be necessary for the Commission in a separate order to specifically include in the Certificate of Convenience and Necessity No. 741 authority to transport acid, in bulk, in special tank truck equipment."

This review presents to us the problem of resolving the uncertainty indicated in the statement just quoted. Therefore, the question for our determination is this: does Certificate of Convenience and Necessity No. 741 issued to Guy Prichard include the right to haul acid?

 It is true that the statute authorizing this court to review proceedings of the Public Service Commission provides that we shall not review questions of fact,[1] and it is not our prerogative to disturb the Commission's finding when supported by competent evidence.[2] These factors, however, have no application to the point in issue here. The interpretation of the Certificate presents a question of law only.[3] The extent of Prichard's authority must be as found within the four corners of the Certificate[4] and the rights thereunder must be such as are fairly understood from the import of its language. Unless there is some uncertainty or ambiguity in the Certificate there is no basis for interpretation or clarification.[5] Operating rights may not be extended by interpretation, and Prichard's authority could not be augmented in this proceeding wherein he appeared only as a protestant.

We therefore address ourselves to the language of the certificate upon which Prichard's rights find foundation. He is authorized:

"To operate as a common carrier by motor vehicle for the transportation of:

"1. Commodities which by reason of their size, shape, weight, origin, or destination *require equipment of (or) service* of a character *not regularly furnished* by regular common *carriers* * * * which commodities shall be such as, but shall not be limited to the following: Gasoline tanks, Boilers, Pipes, and Tubing to be used in connection therewith; Cable, Bridge, or Structural Iron or Steel; Concrete Mixers, Culverts, Explosives, Grading and Road Equipment, Harvestors and Threshers; Locomotives, Machinery and Drag-line outfits; Piling, Pipe, Pole Line Construction Materi-

1. Section 54–7–16, U.C.A., 1953.

2. See Rudy v. Public Service Commission, 1 Utah 2d 223, 265 P.2d 400.

3. Peterson v. Public Service Comm., 1 Utah 2d 324, 266 P.2d 497.

4. See ibid.

5. Ibid.

al; Telephone or Telegraph Poles; Rails, Smokestacks; and Heavy Timbers; Machinery, Materials, *Supplies* and equipment incidental to, or *used* in, the construction, development, *operation,* and maintenance of *facilities* for the *discovery, development, and production of* natural gas and petroleum or *minerals.*

"2. Commodities in connection with the transporting of which is rendered ¸a *special service* in preparing such commodities for shipment or setting up after delivery. * * *" (Italics ours)

Defendant's argument that the Certificate authorizes the hauling of acid rests upon the phrases we have emphasized in the above quotation from the Certificate.

It is first suggested that acid is included within the general language and particularly that it is a commodity which requires *special service* or *special equipment* not regularly furnished by common carriers. In analyzing the intent which was comprehended within the Certificate as issued, it is both necessary and helpful to view it in the light of well recognized standards of construction.

▉ Under the rule of noscitur a sociis, when there is uncertainty about intent, the meaning of doubtful words or phrases is to be determined in the light of associated words and phrases. Sutherland in his treatise on Statutory Construction states: " * * * where two or more words [or phrases] are grouped together and ordinarily have a similar meaning, but are not equally comprehensive, the general word [or phrase] will be limited and qualified by the special word." [6]

▉ Another universally accepted rule which is brought to assistance in arriving at the intention manifest in written documents is that of "ejusdem generis" meaning "of the same kind" which rule is stated thus: When general words or terms follow specific ones, the general must be understood as applying to things of the same kind as the specific.[7] Many examples are noted in Sutherland's text. Perhaps as apt as any is one dealing with an enactment that "the business of a blood-boiler, bone-boiler, fell-monger, slaughterer of cattle, horses or animals of any description, soap-boiler, tallow-melter, tripe-boiler or other noxious or offensive business, trade or manufacture shall not be newly established in any building or place, etc.; and on the question whether a brick-maker was within the regulation, Erle, C. J., thus stated and answered it: 'Is brick-making of necessity a business of a noxious or offensive nature analogous to those specified

6. 2 Sutherland Statutory Construction (3rd Ed.) 393.

7. 28 C.J.S., Ejusdem Generis, p. 1049; 2 Sutherland Statutory Construction (3rd Ed.) 395.

at the beginning of the clause? I am of the opinion that it is not.' " [8]

An analysis of the language of the certificate and the commodities therein referred to plainly indicates that they are of a common class. The thing which makes them non-transportable by regular carriers is their external physical dimensions. This is plainly manifest from the general language and the commodities which are listed. With one exception, it is hugeness of size, or excessive weight, or awkward or unusual bulk which would require special trucks and special equipment such as cranes, winches, or other rigging for the loading and unloading thereof or special service in connection therewith. The single exception is "explosives," which is specifically named. Acid is not expressly mentioned, and although it may be said to require special equipment, the reason therefor is entirely different from the class of commodities covered by the general terms in the certificate. Under the rules of construction above referred to, acid would not logically be considered as falling within the language of the certificate because it is a substance of a wholly different character from those specified.

■■ Defendant argues that the designation of merchandise must necessarily be general because it is impossible to list every item, calling attention to the language "which commodities shall be such as, but shall not be limited to the follow-ing * * *." This he claims should be given significance in liberally interpreting the grant to include acid. It is true that the grant must be to some degree general for the reason just stated. On the other hand, the very fact of regulation by certificate pre-supposes limitations to be contained within it. It is both necessary and desirable that the commodities authorized be defined as clearly and understandably as possible. This can be done with certainty at least as to the *classes* of commodities covered, which was plainly the objective of this certificate. If such loose extensions as here contended for were permitted, the certificates would cease to have meaning or limitation. For instance, Prichard has never claimed the authority to haul gasoline, oil or other similar products. But if his contention here were upheld, where would the dividing line be between the hauling of acid, and the hauling of petroleum products based upon the reasoning that they also require special service and equipment? Modern transportation by truck has become specialized to the degree that innumerable products, such as milk in refrigerated tank trucks, other dairy products, meats, poultry, fruits and other items may be said to require *special equipment or service* in the loading, hauling or unloading thereof to the extent that the use of those terms are not by themselves very helpful in describing limitations of commodities permitted to be hauled under grants of authority to the

8. Ibid, referring to Wanstead Board v. Hill, 13 C.B. (NS) 479.

carriers. They must be considered with the other language describing the grant.

 Finally, it is urged that Prichard has the authority to haul acid based on the language "* * * supplies used in the construction, development and operation and maintenance of facilities for the discovery, development and production of * * * minerals." It is suggested that due to the use to which this acid is put it should be considered as a "facility for the * * * *development* and *production* of minerals." Those terms have a well defined meaning in the mining industry, which is in no way at variance with their ordinary meaning. Webster's dictionary defines the word "develop" as meaning to "free from that which enfolds or envelopes, to lay open by degrees or in detail, to disclose to produce or give forth accordingly, as applied to mining, it means to uncover or bring forth that which a mine produces." "Production" has been defined as signifying to bring oil, gas or mineral to the surface.[9] When separation from the earth has been accomplished the "production" is completed.

Mr. John A. Riddle, Assistant Director of the Processing Division of the Atomic Energy Commission explained the "processing" which takes place after uranium ore has been discovered, developed, produced and delivered to the mill as being a leaching process in which the ore is roasted at a temperature of 800 de-grees centigrade in a solution in which the sulfuric acid and other chemicals are used. Under the authorities, and the common meaning of the terms, the "processing" for which the acid is used refers to activities in refining, milling, smelting or otherwise conditioning ores after, and distinct from, the discovery, development and production of them. Further indication that the "development and production" of ores is not the basis of Mr. Prichard's claimed right to transport acid is the fact that he has been rendering some of such service for purposes in no way connected with the mining industry.

 The apprehensions expressed by the Commission that the authority to haul acids was not included within the certificate were indeed well founded. It is our conclusion that it was not. Where an article claimed to be within a general grant of authority is entirely foreign to the class of commodities covered, such as acid is in this instance, it cannot reasonably be held to be within the meaning of the grant of authority.

It does appear from the record that Mr. Prichard formerly had a contract carrier's permit to do some hauling of acid; that upon the issuance of his common carrier's certificate the permit was cancelled; and that for some years since, he has, with the sanction and approval of the Commission, continued to transport acid. While it is not strictly germane to the issue before

9. In re Sinclair Prairie Oil Co., 175 Okl. 289, 53 P.2d. 221, 223; Tedrow v. Shaffer, 23 Ohio App. 343, 155 N.E. 510.

us, we opine that if he is to continue to transport acid under his certificate, it is desirable, as the Commission has suggested, that proper steps be taken to clarify his authority so that all concerned will know what his rights are.

The Commission having made its determination in the proceeding under review upon the mistaken premise that the certificate of Guy Prichard authorized him to transport acid in bulk, its order is hereby set aside. Costs to petitioner.

McDONOUGH, C. J., WADE and WORTHEN, JJ., and M. M. LARSON, District Judge, concur.

HENRIOD, J., having disqualified himself, does not participate herein.