368 P.2d 590

**MILNE TRUCK LINES, INC., Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah, and Cantlay & Tanzola, Inc., Clark Tank Lines Company, Pacific Intermountain Express Co., and W. S. Hatch Co., Inc., Defendants.**

**No. 9512.**

Supreme Court of Utah.

Feb. 13, 1962.

Skeen, Worsley, Snow & Christensen, Joseph J. Palmer, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., Raymond W. Gee, Asst. Atty. Gen., Richards, Bird & Hart, Mark K. Boyle, Salt Lake City, for defendants.

CALLISTER, Justice.

This matter is before this court on a writ of certiorari to review an order of the Public Service Commission.

On October 20, 1960, Milne Truck Lines, Inc., in contemplation of transporting petroleum and petroleum products in bulk in tank vehicles, filed tariffs with the Intermountain Tariff Bureau, Inc. The four petroleum carriers which were parties to this tariff requested that the Public Service Commission determine whether Milne had the authority it was attempting to exercise. At the hearing before the Commission, Milne contended that its certificate of convenience and necessity, which authorized the transportation of "commodities generally" gave it authority to haul commodities of any type and in any kind of vehicle, including petroleum and petroleum products in tank vehicles. Evidence was offered by the protesting carriers to show that Milne was never issued such authority, and that Milne had never performed, nor held itself out to perform, this service. Milne presented no evidence. The Commission found that Milne's authority to transport "commodities generally" did not include authority to transport petroleum and petroleum products in bulk in tank vehicles, and upon such finding permanently suspended Milne's tariff of October 20th and forebade it to engage in such traffic. On the grounds that the Commission's determination was arbitrary, capricious and contrary to law, Milne brings this petition.

Authority to transport "commodities generally" or "general commodities" is commonly found in certificates of convenience and necessity throughout the motor carrier industry. It is possible that authority to transport "commodities generally" has a different meaning in one part of the country than it does in another. The scope of such authority might also vary from carrier to carrier due to different conditions existing at the time the certificate was issued. For these reasons this court cannot attempt to define "commodities generally" as it is used in all certificates and under all situations, when the only facts before it are those which are pertinent to the case at hand. The meaning of the term "commodities generally" must be ascertained from the particular facts of each case.

In the instant case there is evidence that neither the Public Service Commission nor the carriers operating in this area have ever assumed that the term "commodities generally" included petroleum and petroleum products in bulk in tank vehicles. Annual reports, which all common carriers are required to file with the Commission, have consistently made a distinction between general commodities and petroleum products. In these reports the carriers are required to indicate the type of service which they perform. One category is the hauling of "general freight" and a separate category is entitled "liquid petroleum prod-

ucts." Milne has always reported under the category of "general freight," but never under "liquid petroleum products." Furthermore, these annual reports contain separate headings for the types of products from which the carrier has derived revenue, one such heading is "petroleum products." The distinction made in these reports between "general freight" and "liquid petroleum products" would seem to indicate that the terms "general commodities" and "general freight" are not understood to include petroleum products in bulk. Under Milne's theory, a carrier which hauls only petroleum products would report that it transports both "petroleum products" and "general freight." Such an interpretation would render the distinction that is made in the reports meaningless.

When a carrier which has not previously transported petroleum products in bulk applies to the Commission for authority to do so, almost invariably, the carriers already possessing such authority submit a formal protest to the Commission. Even though there is no evidence that Milne or any other general commodity carrier has ever protested the granting of such authority, Milne contends that it has always had authority to transport petroleum products in tank vehicles.

There is no indication in the record that Milne or any other general commodity carrier has ever held itself out to the public as a carrier of petroleum products; nor

is there any indication that they ever assumed they had authority to do so. On the other hand, as has been pointed out, there is evidence that both the Commission and the carriers have made a distinction between general freight and petroleum products in bulk transported in tank vehicles. The record also indicates that only those carriers which have received express authority to carry petroleum products in tank vehicles have provided this service, and that only those carriers have ever protested the granting of such authority to applicants therefor. The record also contains certificates of six common carriers which not only grant them authority to transport "commodities generally" but expands their authority to transport additional commodities, such as: "including explosives"; "including airplane parts, supplies and equipment"; "including coal and by-products"; "including commodities requiring special handling and household goods"; "including household goods and office furniture" and "including household goods." Under Milne's all-inclusive interpretation of "commodities generally" this further designation of commodities would be unnecessary.

 This court has repeatedly held that where the Commission has acted within the scope of its authority, its order will not be disturbed if it has any substantial foundation in the evidence and is not un-

reasonable or arbitrary.[1] In determining whether the Commission's order is supported by the evidence, this court must consider the factors underlying such order. When, as in the case at hand, the Commission's order is based upon the meaning of a term as it is used in the motor carrier industry, the court will take into account the special knowledge that the Public Service Commission has acquired through its continuous experience in the motor carrier field.[2] Its superior understanding of the carrier industry, plus the fact that the legislature has delegated to the Commission the power to limit a carrier's authority, requires that considerable weight be given to its finding.[3] It must be conceded that this court, by merely reading the record, cannot be made fully aware of the meaning the motor carrier industry has given to the term, "commodities generally."

 The reasonableness of the Commission's order must be determined in light of the statutory setting in which it operates. The Commission is required by statute to regulate so as to prevent unnecessary duplication of services in areas where the existing transportation service adequately meets the needs of the public.[4] Where there are two possible interpretations of the authority contained in a certificate, the interpretation which more fully conforms to the statutory purpose should be adopted. Recognizing that one purpose of this legislation was to prevent unfair and destructive service, this court has held that the Commission's assent was necessary before a carrier could increase its service, even though the scope of its service was not expressly limited in the carrier's certificate.[5] The same principle is applicable to the case now before us. To allow Milne and other general commodity carriers to transport petroleum and petroleum products in tank vehicles without first determining that such service is necessary and in the public interest, would not only be contrary to our statutory purpose, but would substantially impede the regulatory function of the Public Service Commission.

After considering the evidence contained in the record, the Commission's interpretation of Milne's certificate, and the purpose underlying our regulatory statutes, this court cannot say that the Commission's finding that Milne Truck Lines lacked authority to transport petroleum and petroleum products in bulk in tank vehicles was

1. Mulcahy v. Public Service Commission, 101 Utah 245, 117 P. 298; Union Pacific R. Co. v. Public Service Commission, 102 Utah 465, 132 P.2d 128.

2. See Landis, Administrative Process, p. 152, 14 Miss.L.J. 321.

3. Utah Freightways Inc. v. Public Service Commission, 9 Utah 2d 414, 346 P.2d 1079.

4. 54-6-4, U.C.A.1953.

5. Gilmer v. Public Utilities Commission, 67 Utah 222, 247 P. 284.

unreasonable, arbitrary, or unsupported by the evidence.

Order affirmed. No costs awarded.

WADE, C. J., and HENRIOD, Mc-DONOUGH and CROCKETT, JJ., concur.