514 P.2d 804

**Mary A. MURPHY, dba Alex Pickering Transfer Company, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah et al., Defendants.**

**No. 12920.**

Supreme Court of Utah.

Oct. 2, 1973.

---

Joseph J. Palmer, of Moyle & Draper, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., for P.S. C.

Keith Sohm, Sp. Asst. Atty. Gen., Salt Lake City, William S. Richards, Irene Warr, Haldor T. Benson, Salt Lake City, for other defendants.

CALLISTER, Chief Justice:

Plaintiff seeks review of an order of the Public Service Commission interpreting her authority to operate under a contract carrier permit.

This current conflict arose when plaintiff's business manager, after consultation with the Commission's attorney in charge of rate and schedule filings and hearings, filed a schedule of contract carrier rates to be effective on one day's notice on March 28, 1972. During the month of April plaintiff filed two contracts, both incorporating plaintiff's schedule as to rates. These two contracts were with Certified

Warehouse and General Electric, shippers plaintiff had not previously served. Under the last paragraph of Rule VII, the one day's notice applies to contracts establishing charges for new services.

On April 20, 1972, the defendant carriers filed a petition to have plaintiff's permit declared null and void and to have her ordered to cease and desist from providing any transportation service under her permit. Defendants sought and received a hearing date earlier than the usual ten-day notice, to which plaintiff objected. Following the hearing, the Commission ordered that the schedule filed by plaintiff on March 28, 1972, be suspended on the ground that the one day's notice filing was inappropriate. Plaintiff was further ordered to cease and desist rendering any transportation service pursuant to her permit except for service to two accounts, Campbell Soup and Industrial Supply Company, upon whom there were rates filed in December 1954. Plaintiff was further ordered to appear at a hearing to show cause why her contract carrier schedule filed in March 1972 should not be permanently suspended and her contract carrier permit should not be altered or amended.

Following the second hearing, the Commission issued an order, where it permanently suspended the carrier rate schedule previously filed in March and ordered her to cease and desist rendering any transportation service pursuant to her permit ex-cept to Campbell Soup Company. In its findings the Commission quoted the language of plaintiff's permit and then concluded that the authority granted was limited to those shippers for whom contracts were filed in 1954. In order to serve additional shippers, plaintiff must file a notice, have a hearing, and a determination by the Commission that the application met the requisites specified in Section 54–6–8, U. C.A. 1953. The Commission further concluded that plaintiff's failure to render reasonably adequate and continuous service for Industrial Supply constituted a forfeiture of the right to reinstitute service without demonstrating the service was necessary or plaintiff was not responsible for the failure to give service; plaintiff had not made either of the necessary proofs. Following the denial of plaintiff's petition for rehearing by the Commission, she sought review before this court.

The basic issue of this case is what type of authority was granted to plaintiff in her contract carrier permit, i.e., does she have an open-end contract carrier authority whereby she may contract with new shippers without a hearing or is her authority limited to specific shippers with whom she had contracts in 1954 and to enter into new contracts she must show a need for the service and that the existing service is inadequate.

Plaintiff is the widow of John M. Murphy, who was granted Contract Carrier

Permit No. 130 on May 16, 1936, wherein he was authorized "to operate on and over all of the highways of the State of Utah as a contract motor carrier of all kinds of personal property including merchandise, machinery and other property which he has occasion to carry in the course of the conduct of his said transportation business." Upon John's death, his wife Mary applied for a transfer of his permit to her as provided in Section 54–6–24, U.C.A. 1953. Upon notice and hearing, the Commission ordered such transfer with the limitation that the business was to be conducted within a 50-mile radius of Salt Lake City, the area the Commission specifically found where the permit was being operated by John Murphy at the time of his death. The order of the Commission also transferred a Certificate of Convenience and Necessity to plaintiff and some of the provisions in the order refer to both the certificate and the permit. The order provided:

IT IS FURTHER ORDERED, That Contract Carrier Permit No. 130 be and the same is hereby transferred, as herein modified, to Mary A. Murphy, doing business as a contract motor carrier of all kinds of personal property including merchandise, machinery, and other property which she has occasion to carry in the course of the conduct of her said transportation business within a 50 mile radius of Salt Lake City, excluding pick-up and delivery service within the area described in Certificate of Convenience and Necessity No. 684.

IT IS FURTHER ORDERED, That the above described Certificate and Permit shall become effective twenty (20) days from the date hereof upon the condition that applicant files the necessary insurance and tariffs or contracts with respect to the permits, in accordance with the Commission's rules and regulations. Upon failure to file insurance and tariffs within twenty (20) days after date of this order, the certificate and permit herein issued shall become null and void.

IT IS FURTHER ORDERED, and is made a condition of the Certificate and Permit herein issued that the applicant shall render reasonably adequate and continuous service in pursuance of the authority herein granted, and that failure to do so shall constitute sufficient grounds for termination, change, or suspension of said Certificate and Permit.

In 1972, the Commission interpreted the 1954 order as contemplating the plaintiff would file contracts with the Commission designating the shippers for whom she would render a transportation service. Within the extended time limit, the only shippers for whom contracts were filed were Campbell Soup and Industrial Supply, the Commission concluded that after the

expiration of the extended time limit, plaintiff could only contract with additional shippers after obtaining the assent of the Commission in accordance with Section 54–6–8, U.C.A.1953.

At the hearing Keith Sohm, a commerce attorney for the Commission for 20 years, testified as to his knowledge of two types of contract carrier permits. In the one type, the shipper or shippers are designated in the order as being authorized to be served by the carrier; before the carrier may contract with another shipper, the Commission must have a hearing and a proof of need must be made. The other .type of permit was characterized by the witness as an open-end contract carrier authority, and no hearing is required to add new shippers under this type of authority. The witness knew of only two permits granting the latter type of authority, plaintiff's and one other. He could not recall any permits of this type being issued in the past 20 years.

Plaintiff contends that her permit grants her a general contract carrier authority, unlimited as to any shipper and that the restrictive interpretation of her authority by the Commission cannot be sustained. She points out that there was no evidence to support the conclusion that the 1954 order contemplated the restrictions as to shippers, and, therefore, her contract filings in 1972 were perfectly valid.

The interpretation of the permit in the instant case presents a question of law only.[1] The extent of plaintiff's authority must be found within the four corners of the permit, and the rights thereunder must be such as are fairly understood from the import of its language. Unless there be some ambiguity or uncertainty, there is no basis for interpretation or clarification of the permit. It is impermissible to go behind the language of the permit and contradict its plain terms.[2] The instant case is distinguishable from Milne Truck Lines, Inc. v. Public Service Commission [3] which was cited by the Commission in its order, for in the Milne case there were two possible interpretations of the term "general commodities" as used in the grant of authority.

In the instant case, the order of 1954 clearly granted a general contract carrier permit, which was described by Justice Wolfe in a concurring opinion in McCarthy v. Public Service Commission [4] as not limited to a particular contract or for hauling for a particular person. The

1. W. S. Hatch Co. v. Public Service Comm., 3 Utah 2d 7, 10, 277 P.2d 809 (1954).

2. Peterson v. Public Service Comm., 1 Utah 2d 324, 327, 266 P.2d 497 (1954); Salt Lake Transfer Co. v. Barton Truck Line, Inc., 8 Utah 2d 401, 404, 335 P.2d 829 (1959).

3. 13 Utah 2d 72, 368 P.2d 590 (1962).

4. 111 Utah 489, 502, 184 P.2d 220 (1947). ·

condition in the permit from which the Commission constructed the challenged restriction, namely, that plaintiff file her contracts with respect to the permits, in accordance with the Commission's rules and regulations, was merely in accordance with Rule VII. This rule provides that each contract carrier of property by motor vehicle, subject to the act, shall file one copy of each and every contract existing and in force containing the charges of such contract carrier for the transportation of property in intrastate commerce. The rule further provides that the contract so filed shall be in lieu of any schedule theretofore filed and shall cancel any such schedule. The condition of the provision, as fairly understood from the import of the language, was that plaintiff must file her existing contracts containing the charges for her services. There is no language which may be interpreted as restricting the general contract carrier authority granted in the prior paragraphs of the order to the contracts filed; the Commission erred in so concluding.

Since the restrictive interpretation of the plaintiff's grant of authority by the Commission is erroneous, the order is vacated. Plaintiff's other points in her brief become moot under this court's interpretation of her authority. No costs awarded.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

The thesis upon which the plaintiff must prevail in order to reverse the order of the Commission is stated as point 1 of her brief, that:

The Commission erred in not ruling plaintiff holds general contract carrier authority, unlimited as to any shipper.

There are two propositions which stand as insuperable obstacles to the position thus contended for by the plaintiff. The first is this proposition of law: There is no basis whatsoever in law for any such "open-end" contract carrier authority as the plaintiff contends for. The second is this proposition of fact: That even if there were, the plaintiff has not shown that she in fact has any such authority, nor even any reasonable semblance thereof.

The plaintiff's position is that she (actually her successor Max W. Young to whom plaintiff had entered into an agreement to sell the operating rights, and who is in fact operating the business) has the right to file and haul under new contracts without the approval of the Commission. There is not cited nor does this writer believe there can be found any statutory or decisional authority to support any such "open-end" contract carrier authority. On the other hand, it is contrary to the statutory and decisional law dealing with the distinctions between the common carrier as

contrasted to the contract carrier.[1] To say or to conclude that a contract carrier has an "open-end" authority is simply a contradiction in terms. By whatever title he may be called, a "contract carrier" with unlimited authority to haul for anyone who would engage his service would not be a "contract carrier," but a "common carrier."[2]

Plaintiff's argument is based upon certain statements of the commerce attorney for the Commission, called as a witness on her behalf, as to what he understands has been the practice of the Commission. There are admittedly one or two statements which looked at separately provide some plausibility to her argument. But in other parts of his testimony he clearly and solidly supports the ideas projected herein. One of the new commissioners questioned him:

COMMISSIONER W.: Mr. Sohm, do you know what the practice of this Commission has been in regard to *contract carriers entering into new contracts?* . . . has there been a practice to require a hearing to *show public convenience* and *necessity?* What's your experience been in that regard?

A. In regards to a transfer from one contract carrier to another, or an original application?

COMMISSIONER W.: *No, an existing contract carrier entering into new applications or new contracts.*

A. *Oh, in every instance where a contract carrier* authority is issued, and it is issued to serve a particular shipper, *in order to add another shipper, the Commission must have another hearing* and a proof of need must be made. The term that is used is not a showing of convenience and necessity, because the term's used only with common carriers, but "a showing of need" must be made, and existing service inadequate.

If this case is to be decided on the basis of the testimony of the attorney, (which it should not be, but upon the law and the facts), then it should be upon the basis of the standard rules of review: That the adverse parties are entitled to the most favorable aspects of his testimony; and more importantly, that this court should assume that the Commission believed the testimony favorable to its decision. But whatever value this testimony may have, neither the testimony, nor the evidence, shows that the

1. See Sections 54-6-1 to 54-6-8, U.C.A. 1953.

2. E. g., as to common carriers, see Uintah Freightways, Inc. v. Public Service Comm., 15 Utah 2d 221, 390 P.2d 238; as to contract carriers, see Uintah Freight Lines, et al. v. Public Service Comm., 119 Utah 491, 229 P.2d 675; as to the distinction between common motor carrier and contract carrier, see discussion in McCarthy, et al. v. Public Service Comm., 111 Utah 489, 184 P.2d 220, particularly separate concurrence of Justice Wolfe.

plaintiff has any such "open-end" authority. The evidence is clear and certain to the contrary; and so are the findings and determination made by the Commission.

Turning to the question of fact: It is equally clear that even under the erroneous concept of an "open-end" contract carrier permit, the plaintiff has not shown that she has any such authority.

It perhaps should be stated that some lack of clarity may exist in this case arising from the fact that plaintiff's husband, prior to his death in November of 1953, had a Certificate of Convenience and Necessity, No. 684, as a common carrier, and also a Contract Carrier Permit, No. 130. Pursuant to appropriate proceedings to transfer these operating rights of her husband to the plaintiff, some language is used which may leave something to be desired as to keeping these operating rights clear and separate. However, it is of the utmost importance on the issue here confronted that in that proceeding the Commission's Report and Order transferring the authorities of plaintiff's husband to the plaintiff lawfully and properly imposed certain conditions:

IT IS FURTHER ORDERED, that the above described Certificate and Permit shall become effective twenty (20) days from the date thereof *upon the condition that applicant files the necessary* insurance and tariffs, or *contracts with*

*respect to the permit*, in accordance with the Commission's rules and regulations.

It is further significant that there was never any objection to nor appeal from that Order. It therefore became as final as any other judgment would be. The plaintiff accepted it and recognized its validity by requesting an extension of time to file the required tariffs and contracts. This request was granted, and within the time allowed, in December 1954, the plaintiff filed only two contracts, one with Campbell Soup Company and the other with Industrial Supply Company. No other contracts were filed with respect to this contract carrier permit until 18 years later, in March of 1972, when the plaintiff (her successor, purchaser of the business, Max W. Young) filed the contracts in controversy here, upon which it initiated service, and insists upon the right to serve without approval of the Commission.

As I see the situation, the plaintiff has no just complaint against the order of the Commission. It places her in exactly the same position as every other authorized contract carrier. It states:

That before Mary A. Murphy, dba Pickering Transfer Company, can contract with additional shippers pursuant to the Contract Carrier Permit No. 130, *she must obtain the assent of the Commission* in accordance with 54-6-8 Utah Code Annotated 1953, as amended.

**148**

It is submitted that this provision is not only in harmony with, but required by the statutory and decisional law on this subject;[3] and with the rules of the Commission.

The necessity and desirability of the Commission having the authority to require a contract carrier to file its proposed contracts for approval is so obvious as to require nothing more than brief mention here.[4] It has the responsibility of protecting all existing carriers and seeing that the public has not only efficient and economical but continuous service. To allow any one "contract carrier" to have an open-end authority, as contended for by the plaintiff, to canvass shippers for the favorable, regular and profitable hauls, and leave the rest to the common carriers, who are obliged to serve all shippers, large or small, short or long haul, would be destructive of that purpose.

From what I have said above, it is my opinion that the decision of the Commission was well advised; that it is amply supported by the record; and that there is no basis whatsoever for any reasonable conclusion that its action was capricious or arbitrary. (All emphasis added.)

3. Sec. 54-6-11, U.C.A.1953, imposes the duty upon the Commission to supervise and regulate contract carriers. That the Commission can refuse to approve proposed new contracts, see Goodrich v. Public Service Comm., 114 Utah 296, 198 P.2d 975; or refuse increased service, where to do so would be detrimental to other interests of competing carriers and hence to the public, see Milne Truck Lines,

Inc. v. Public Service Comm. of Utah, et al., 13 Utah 2d 72, 368 P.2d 590.

4. E. g., see Barton, etc. v. Public Service Comm., 29 Utah 2d 392, 510 P.2d 927; and Goodrich v. Public Service Comm., footnote 3 supra; and also see statement of Justice Henriod in dissent, Williams v. Public Service Comm., 29 Utah 2d 9, 504 P.2d 34.