Mary A. MURPHY, dba Alex Pickering Transfer Company, and Pickering Transfer Company, Inc., a Utah Corporation, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF UTAH et al., Defendants.

No. 13926.

Supreme Court of Utah.

Aug. 6, 1975.

Joseph J. Palmer, Moyle & Draper, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., Thomas M. Zarr, William S. Richards, Irene Warr, Salt Lake City, for defendants.

HENRIOD, Chief Justice:

Review of a Public Service Commission order denying an application to transfer to a concededly capable and experienced executive in the trucking field of 1) A Permit to operate as a Contract Carrier,[1] and 2) Common Carrier Certificate,[2] in which such capabilities or financial responsibility were not issues. Reversed, with costs assessed against the Protestants.

Under the statute, to obtain and presumably *transfer* Certificates or Permits to act as Common or Contract Carriers, a statutory procedure must be followed.[3]

Mrs. Murphy, an aged but most capable operator and *owner* of the *Permit* and *Certificate* mentioned contracted to transfer her rights in these established franchises to one Young, a person which the record reflects to possess conceded know-how and ability, who has in this case undertaken by contract, to buy and continue a business that successfully has survived earthquake and time for nearly half a century.

If anyone owning such a franchise had passed away before litigation like this there would seem to be little doubt but that the representative of his or her estate, as of right, under Court supervision, legislatively, constitutionally, contractually, and otherwise could have carried on or sold the franchises that have become valuable assets. This is such a case unless there exists some sensible, reasonable reason to prevent such a transaction,—which we believe does not prevail here.

We thought the Murphy case, recently decided by us,[4] espoused this basic doctrine of vested rights. The petition for transfer,

1. No. 130. "To operate as a contract motor carrier of all kinds of personal property including merchandise, machinery, and other property which she has occasion to carry in the course of the conduct of her said transportation business within a 50-mile radius of Salt Lake City, excluding pickup and delivery service within the area described in Certificate of Convenience and Necessity No. 684."

2. No. 684 sub (1). "To operate between all points and places in Salt Lake County and all points and places in Davis County south of the junction of U. S. Highways 89 and 91 just north of Farmington, Utah, but excluding from said area that portion of Salt Lake County which is both west of 4800 West and south of 1300 South, but including the town of Kearns, Utah."

3. Title 54-6, Utah Code Annotated 1953, and amendments thereto.

4. *Murphy v. P. S. C.*, 30 Utah 2d 140, 514 P.2d 804 (1973).

subject of this appeal, was pending before and at the time the Murphy case was decided, and everyone stipulated in that case that the application for transfer of the *Contract Carrier Permit* (not the Certificate of Convenience and Necessity) would be subject to the decision of this Court in the Murphy case, as to Mrs. M's prerogative to exercise rights under her Contract Carrier Permit.

This Court reversed the Commission's order that she had no prerogative to serve contract shippers until she complied with Title 54–6–8, having to do with requirements to *initiate,*—not *operate under,*—a Contract Carrier Permit, with the concomitant condition of proving 1) the highways were not unduly burdened, 2) the *granting* (not *transferring*) of the Permit would not interfere with public travel, 3) be detrimental to public interest, and 4) that existing carriers aren't doing an adequate job. We said her Permit was not limited as to number of contracts. As a logical conclusion, it would seem that such a valuable right should not be taken away by saying that such a vested right declared by us to be impervious to attack because of number of contracts involved, would be vulnerable to destruction by saying that to *transfer* it should require a procedure necessary to *create* a right,—a thesis which not only looms large on the threshold of almost obvious inequity,—but which would appear to clothe itself with the vestments of highly doubtful constitutionality. The simplicity of such a logical conclusion easily may be illustrated by a hypothetic: Assuming that if *Mr.* Murphy, the original owner of the rights, had been a corporation, and that all of the stock of such corporation had been transferred to *Mrs.* Murphy before his death, then: The rights in the Permit and Certificate effectively could have been administered, carried on and transferred without interruption, and even without the necessity of petitioning or even calling on the Public Service Commission. That governmental agency incidentally and primarily should be as interested in protecting carriers with vested rights, as well as their competitors and the public.

There was a lot of discussion in the briefs anent whether Mrs. M., who apparently in an honest effort to comply with everything necessary and to expedite matters, formed a corporation that became the owner of the franchises, had a real and binding agreement with Young, the signatory, purchaser subject only to P.S.C. approval. Under such circumstances this court assumes that approval, if any doubt existed, would be inoculated against partiality. It could not be disputed in this case, that, subject to such approval, there *was* such a contract, specifically enforceable.

The protestants,—veritable Goliaths in the local freight-hauling badminton game, —apparently conceding that, if Mrs. M. continued her business there would be no complaint, attempted to say that if the transfer involved eventuated, they would be damaged because they had made improvements and plans with which such transfer would interfere. Such anticipatory extrasensory perception hardly is reserved to competitive tandem truckers or their privies, but seems to presage in this case a fear not of Pickering or Murphy, but Young.

Such proffer of evidence was admitted sort of *pro forma* over the objections of Plaintiffs' counsel,—and in spite of them, —save for a concession that *if* protestants cared to burden the record with such immateriality, it would be conceded their witnesses would say what they said they would say, which is not a case to make a case in this case. Fortunately the witnesses were not sworn as parrots to such a proposition, and thus were saved the rigors of cross-examination.

The Commission, in its order, appearing almost without any keystone factual structure, found that a) there was no contract between Murphy and Young, and that b) it, the Commission, could not determine if Young was ready, willing and able to con-

tinue the service under the franchise, (all of which the record fully and completely flouts). Such were the reasons given by the Commission to annihilate a couple of highly valuable, history-salted-down rights, which Commission determination highly favored the protestations of the protestants beneficently looking to the encouraged and premature demise of an elderly widow's mite.

There is a lot of talk about Rule III of the Commission, presumably supplementary but not substitutive of the statute, which, on casual reading, attempts to legislate the Legislature, and to distort and dispense with one's Constitutional property rights.

Aside from the rhetoric and obvious effort to eliminate existing competition, we think that one of our cases, *Collett v. P. S. C.,*[5] applied to the facts and fancies of the instant case, is dispositive. In that case, involving the transfer of a Certificate of Convenience and Necessity, it was held that the transferee need not be required to show anew that public convenience and necessity require its service. We said:

. . . It would seem reasonable to believe from the following facts that public convenience and necessity does exist for the continuance of the service contemplated: An increase in carrier service is not contemplated by the application; *only a substitution of certificate holders is contemplated*; and *public convenience and necessity has once been decided* as existing, and *has been recognized as continuing* to exist to the present time by continuous exercise by Gould of his certificate rights, which had not been revoked prior to this hearing. *The only important question under such circumstances is that of the qualification of the prospective new certificate holder to render the necessary public services.* The question as to whether or not the opportunity to hold the newly issued certificate should be offered to existing certificate holders rather than a stranger is more a question of private interests than a question of public interest. If the Commission were restricted to present certificate holders, it might have a rather serious injurious effect upon the carrier who wishes to abandon his certificate and retire from business. His years spent in working up a good will would net him nothing, as no one would be interested in taking over where he leaves off. [Italics ours.]

There is nothing in the record in this case that reflects any incapability on the part of Mr. Young, transferee under contract, to carry on business as usual. The only threat that seems sensitive here, may be Young's potential ability to enervate competition.

We think the Commission, in this case, did not follow or adhere to the philosophy or decision of the Collett case or that enunciated in *S. L. Transfer v. P. S. C.,* 11 Utah 2d 121, 355 P.2d 706 (1960).

Although under Title 54–7–16, U.C.A. 1953, we may affirm or set aside the P.S.C. order and under this decision having arrived at the conclusion we set aside, we suggest that the Commission re-examine the record in this case in light of the property rights mentioned and existing pertinent authorities and facts in this case, and make such order as will be compatible with this decision.

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

CROCKETT, J., concurs in the result.

CROCKETT, Justice (concurring in result, with separate comments):

My view is somewhat different than as I understand the import of the main opinion concerning the degree of freedom with which a certificate of convenience and necessity, or a contract carrier permit, may be

5. 116 Utah 413, 211 P.2d 185 (1949).

sold without let or hindrance from the Public Service Commission. This has to be considered in connection with whatever prerogative the Commission has to approve or disapprove transfers of such authority due to its responsibility to regulate such operations. It is my judgment that the main opinion states the proposition a bit too strongly in favor of an uninhibited right to transfer; and that this does not reconcile with the duty the law imposes upon the Public Service Commission to regulate the certification and operations of such carriers.

I fully appreciate that a carrier who has well and faithfully performed, and thus built up value in going concern and good will of a business, should be entitled to benefit therefrom and therefore should presumptively be entitled to sell it; and in the absence of some good reason, the Commission should not withhold its approval of such a sale and transfer. Nevertheless, such an authority cannot properly be regarded as subject to bargain and sale in the same way as any other property or business.[1]

It has been legislatively determined that carrier service is so affected with a public interest that it is subject to regulation and control by the Public Service Commission, both as to who will possess the authority and the way the business shall be carried on.[2] It has the responsibility of carrying out that mandate in such manner as to best assure efficient, economical and continuous carrier services. That is the reason the sale of such a business and the transfer of an operating authority to another can properly be done only upon obtaining the approval of the Commission. If in the judgment of the Commission there is any valid and substantial reason that it will not be in the best interests of providing the public with efficient, economical and adequate transportation facilities, it would be consistent with its responsibility and within its prerogative to refuse to approve such a transfer.

I commented on the irregular nature of the contract carrier authority here involved in my dissent in the prior case, *Murphy v. P. S. C.* (footnote 4, main opinion), and indicated my judgment as to its erroneous and inconsistent nature. The Commission's later decision in this case was apparently an effort to get rid of this hybrid, anomalous, and I think one of a kind, contract carrier permit. It was derived on the basis of "grandfather rights,"[3] passing to the widow, now 93 years of age; and on to Mr. Young, who, for his sake, I hope lives to a similar age; and then, I assume, on to his successor, and so on ad infinitum, if the Commission can never get rid of it.

Notwithstanding my firm belief that the prior decision was in error, I conceive it to be my judicial duty to accept that decision as settling that issue in this case; and that I should therefore be precluded from any further dissent on that issue. Accordingly, I have not done so, but concur in the result agreed upon by my colleagues, expressing the reservation as to free and uninhibited transfer of such authorities, believing it can properly be done only under the supervision of, and with the approval of, the Public Service Commission, subject only to the standard rule of review for arbitrariness.

1. It was formerly expressly provided by statute, Sec. 76–5–4, U.C.A.1933, that such rights were assignable. But that section was repealed by Sec. 35, Chap. 53, S.L.U.1933, which seems to indicate a legislative intent that there should not be free and uninhibited assignment. Also, cf. our statute, Sec. 54–6–24, U.C.A.1953, provides for transfer in the event of death, but subject to certain conditions and the approval of the Public Service Commission.

2. Sec. 54–6–4, U.C.A.1953.

3. As authorized by Sec. 9, Chap. 65, S.L.U. 1935; and amdts., now in our code as Sec. 54–6–8, U.C.A.1953.